ORLIN H. GILLETT, Appellant, *vs.* PHILO GILLETT, Administrator *de bonis non* of Benoni R. Gillett.

APPEAL FROM CIRCUIT COURT, LAFAYETTE COUNTY.

Heard July 18.]                    [Decided August 3, 1859.

*Administrators—Answer—Payment—Pleading.*

An answer which sets up as a defense, that the notes on which suit is brought were secured by mortgage on lands in Illinois, to which the plaintiff's decedent had an equitable title, and that title being sold an execution against

Gillett vs. Gillett.

the estate was bought in by attorneys holding these notes for collection, and that afterwards the plaintiff and administrator of the estate agreed for and took the title to the land in his own name, and also took the notes from the attorneys for a specified consideration by him paid, such an answer is a complete defence to his right to recover in his individul capacity, as a creditor of the estate, from the administrator *de bonis non.*

It would seem that where an administrator of an estate purchases notes due from the estate, that he cannot equitably prosecute an action against the estate upon the same notes.

It is the duty of an administrator to pay, not to purchase notes due from the estate; and the presumption would be that it was a payment, and the notes would be considered extinguished; though the administrator might retain them for the mere purpose of obtaining from the estate the amount actually paid, in a settlement of his account as administrator.

An administrator or executor cannot become the purchaser of outstanding securities or claims against the estate and then enforce them against the estate, but they become extinguished in his hands, and he can only be allowed what he actually paid for them.

The facts in this case sufficiently appear in the opinion of the court.

*J. T. Mills,* for respondent.

*J. H. Knowlton & Chas. Dunn,* for appellant.

*By the Court,* PAINE, J.   We think the order of the court below in this case, sustaining the demurrer to the defendant's answer must be reversed.

That part of the answer demurred to does not aver the facts with the greatest certainty or precision ; but it substantially sets forth the following:   That the notes sued on were secured by mortgage on land in the state of Illinois, to which the deceased had the equitable title ; that this title was afterwards sold on execution, and that Washburn & Hempstead became the purchasers, they being attorneys and holding these notes for collection, against the estate of the deceased ; that the plaintiff being at that time administrator of the estate of the deceased, in the state of Illinois, made

Gillett vs. Gillett.

an agreement with Washburn & Hempstead by which he was to take a conveyance of the title of the property, on the payment of a consideration specified, and to hold it in his own right; and that they in addition to conveying him their interest, were to surrender to him these notes as having been paid by him, as such administrator.

It is not expressly averred that, notwithstanding the execution sale, the estate still had a valuable interest in the land. But we think this fact sufficiently appears from the allegations made, and that this valuable interest was, by the agreement between Washburn & Hempstead and the plaintiff, to become vested in the plaintiff, and that as a consideration for it, he paid these notes against the estate. If this is so, and by virtue of this agreeement, the title was conveyed to the plaintiff, and these notes surrendered to him as administrator, as substantially alleged, it is a complete answer to his right to recover on them, in his individual capacity, from the administrator *de bonis non* in this state.

It is not necessary for us to determine here the entire effect of this agreement. That is not involved in the case. It is only necessary to determine whether it would destroy the plaintiff's right to recover on the notes against the estate in this state ; and of this there can be no doubt. Because, if the answer is true, the plaintiff has acquired title to property, a part of the consideration for which was to be the payment by him of these notes for the estate. Surely he could not, after that, bring them across the line, into Wisconsin, and recover from the estate the amount of them, as a creditor. Such a proceeding would be a fraud too palpable for any one to sustain for a moment; and yet, we think the answer sets up this state of facts with sufficient certainty to be good on demurrer, though it might perhaps be required to be made more definite and certain on motion. It sets up a payment by the plaintiff as administrator, not a purchase in his own

right. And if he paid them as the personal represenatative of the deceased, they were in his hands extinguished securities. But even if the answer were to be construed, as contended for by the counsel for the respondent, as setting up a purchase of these notes by the plaintiff, while he was at the same time administrator of the estate, out of which they were to be paid ; we think there is great doubt whether that should not be held, at least, an equitable defense against their prosecution by him in this state. It was his duty as administrator to pay, not to purchase, the notes. The presumption in all such cases is of payment instead of purchase. *Borst vs. Bovee,* 5, Hill, 219 ; *Johnson vs. Blackman,* 11 Conn., 342.

And we think there are strong reasons for holding that wherever outstanding securities against the estate which he represents are taken up by an executor or administrator, even though with his own money they should be considered as extinguished, unless there should be particular reasons making it necessary to keep them alive for the protection of the rights of others; or to enable him to get from the estate the amount he actually paid. The rule is well settled that such trustees are not permitted to purchase the trust property; not because they might not in many instances make fair and honest disposition of it to themselves, but because the probability is so great that they would frequently do otherwise, without the danger of detection, that the law considers it better policy to prohibit such purchases entirely, than to assume them to be valid, except where they can be proved fraudulent.

And the reasoning on which this rule is founded applies with great force to the purchase by an executor or administrator of outstanding securities against the estate he represents. If he is allowed to take an assignment of them to himself and enforce them against the estate, there is great temptation to collusion with persons holding claims, to the

prejudice of the heirs. And for this reason it has been established that an executor or administrator can make no profit by such a purchase, but can only recover of the estate the amount he actually pays. *Everston vs. Tappan,* 5 John. Ch. Rep., 494; *Stanley vs. Mancius,* 7 id., 174.

And it would seem the safest and most certain way of enforcing this rule, to hold that wherever such a purchase is attempted, the administrator, in order to recover, should be compelled to set forth and show the amount actually paid; and ordinarily the place to do this would be in settling his account. The supreme court of the U. S., in *Michoud, et al., vs. Girod, et al.,* 4 How., 559, after alluding to the rule prohibiting the purchase of the trust property by the trustee, says: "The rule as expressed embraces every relation in which there may arise a conflict between the duty which the vendor or purchaser owes to the person with whom he is dealing, or on whose account he is acting, and his own individual interest." And this would clearly include such a purchase of an outstanding security or debt by an administrator, because there would always be a temptation for him to purchase at a discount for his own benefit, and not for the benefit of the estate; and he might even by collusion suppress just defenses, within his knowledge, against claims, in order to purchase them at less than their full amount, and then collect that full amount from the estate. And if the burden of proof is held on those interested in the estate to show what he did actually pay, there is great danger that detection in many cases would be impossible. And we think, therefore, with the court in the case of *Johnson vs. Blackman,* before cited, that "the principle is the same as to buying in the trust estate, or securities upon it."

It might be said that the same wrongs may be perpetrated by executors and administrators acting confessedly in their fiduciary capacity, in paying off the debts of the estate, and

Gillet vs. Gillett.

that the securities taken up by them remain as vouchers in their hands for their full amount. This may be so. This class of trustees, like all others, have undoubtedly great opportunities for wronging those for whom they act. And this is why the rule holding them to the strictest good faith has been established. In the case supposed they would be acting in their proper character as trustees, with nothing perhaps to raise a suspicion. But where they attempt to deal with the trust property, by purchasing outstanding debts on their own account, and then enforcing them as creditors of the estate, this is on its face a circumstance of suspicion, and should place upon them the burden of showing what they actually paid.

We think, therefore, that if the plaintiff took up these notes in Illinois, while administrator of the deceased, that the presumption is that he paid them as administrator, and that his remedy, if he has advanced his own funds for the estate, is to settle his account with the proper court there ; and if there was a balance in his favor, and not enough assets in his hands to pay it, he could resort to the assets in this state.

The order of the court below, sustaining the demurrer, is reversed, and the cause remanded for further proceedings in accordance with this opinion.