## In re THE TAYLOR ORPHAN ASYLUM.

TRUST: EXECUTORS: CHARITY. (1) *Purchase of trust property at executor's sale by attorney of executors, effect of.* (2: 1) *Sale by such attorney, effect of.* (2: 2) *Purchase of trust property by fiduciaries improper; their liability for profits.* (5) *Limitations upon the rule; ratification by* cestui que trust. (6) *Such ratification inapplicable to case of a charity.*

TAYLOR ORPHAN ASYLUM: STATUTE: JURISDICTION. (3) *Ch.* 81, *Laws of* 1874, *construed.* (4) *Equitable action independent of statute, to compel directors to account.*

1. A testator bequeathed money to certain ladies in trust to erect and support an orphan asylum, the money to be paid to the asylum when incorporated and empowered to receive it; and there was a residuary devise to the executors in trust for the maintenance of the asylum, with power in the executors to sell the land so devised. The ladies named in the will were afterwards incorporated for the purposes there expressed. A piece of land included in the residuary devise

In re The Taylor Orphan Asylum.

was offered for sale by the executors; and, no satisfactory bid being received, it was bid in on behalf of the executors by their attorney, and was by them in form conveyed to him, no money being in fact paid on the sale. *Held*, that the title of the attorney was merely that of the executors, and was held by him in trust, and he could not, even with the consent of the executors and the corporation, have held the land for himself.

2. By order of the executors, upon their sale, and on a consideration paid to them, their said attorney conveyed the land to A. for the same amount for which it had been bid off to himself. A. purchased the land under an agreement with B. and C., two of the directors of the asylum, one of whom was also one of the executors, that he was to be actual purchaser of only one-fourth, and that B. and C. would find other purchasers for the remaining three-fourths. After the sale, B. and C. proposed themselves and D., another director, as purchasers of said three-fourths; each of the three took a contract from A. for a conveyance of one-fourth of the land on payment of one-fourth of the price; and each paid one-fourth of the money which was paid down to the executors on A.'s purchase. Ten months afterwards, A. sold the land for double the price so paid for it, and B., C. and D. each received one-fourth of the profit made. *Held*,

(1) That the sale and conveyance to A. by said attorney was in effect a sale and conveyance by the executors in behalf of the asylum, and was made, in contemplation of law, not to A. alone, but to him and the three directors interested with him in the arrangement above stated.

(2) That such purchase by B., C. and D. (they being fiduciaries, owing a duty to obtain the highest practicable price for the benefit of the asylum) was in violation of the settled policy of the law; and they must account to the trust fund for their profits on the resale, even though the price paid by them for the land was a fair one at the time, and there was no fraud in fact.

3. By the terms of ch. 81, Laws of 1874, the board of directors of said asylum are required, at a specified time in 1874, and annually thereafter, to render an account to the circuit court for Racine county, of all moneys, property, etc., theretofore placed in the hands or under control of said board by the executors of the will aforesaid, and of their dealings with all trust funds and property which shall have come into their possession or under their control; and the court is authorized and required to compel such accountings to be made, and for that purpose is empowered to order any or all members of the board of directors to appear before the court and produce the statements and accounts required to be made; and thereupon it is required to proceed in a

summary manner to examine and investigate such accounts, and, for the purpose of ascertaining their correctness, and of correcting any errors therein, to take the testimony of any person, etc. It is further provided that said court shall have full power to revise and correct such accounts in all particulars, " and to compel *any member of said board of directors who may have in his or her possession any moneys or property belonging to said orphan asylum, to pay over and deliver the same to said corporation,* and shall make such order in the premises as will fully protect the fund created by said will," etc., etc. · *Held,* that the act authorizes the circuit court, in the summary proceeding there provided, to compel individual directors to pay over or to deliver any moneys or property in their hands which justly belong to the asylum, even where the same have never been in the possession or under the control of the board of directors, and cannot therefore be included in its account; and an order of said court requiring B., C. and D. to pay over to the asylum their respective proportions of the profits on the resale of the land above described, is affirmed.

4. Apart from the statute, a suit in equity would lie in the name of the state or other proper plaintiff, against the corporation and the individual directors, for an account and restitution to the trust fund of moneys rightly belonging to it and withheld or appropriated by individual directors, although such moneys had never come to the possession of the corporation. And the statute merely gives the court the same extent of jurisdiction in the summary proceeding therein provided for.

5. It is doubtful whether the rule that dealings by a trustee for his own advantage in the subject of his trust are not void, but only voidable at the election of the *cestui que trust,* is not confined to cases where the object is strictly the avoidance of the *title acquired* by the trustee, and the restoration of *the thing itself* to the trust. When the trustee sells again, and there is no question of the restoration of the thing, the trust attaches to the trustee's profits in the transaction, and he is accountable for it to the *cestui que trust.*

6. But the rule as to ratification by the *cestui que trust* is inapplicable to the case of a charity, whether administered by natural persons or by a corporation, who are themselves only trustees, while the real beneficiaries are, from the nature of the case, incapable of acting to protect the trust fund, or of electing to avoid the dealings of the trustees, or of prosecuting proceedings in avoidance of them. In such a case the right to protect the fund is in the *visitor;* and where there is no personal visitor (and, it seems, even where there is one), the right is in the *state,* to be exercised in this case through the visitatorial powers vested, by the act of 1874, in the circuit court. And that

In re The Taylor Orphan Asylum.

court, in the exercise of its visitatorial and equitable powers, having all the necessary facts and persons before it, will avoid all transactions of any of the fiduciaries of the charity, which are in fraud of it, without requiring a separate action for the purpose to be brought by the corporation charged with administering the fund.

APPEAL from the Circuit Court for *Racine* County. This was a proceeding under ch. 81, Laws of 1874,* to com-

* This act provides as follows: "Sec. 1.  *  *  *  The board of directors of said asylum [The Taylor Orphan Asylum] shall, on the first day of the March term, A. D. 1874, of the circuit court for Racine county, render to said court a full, accurate and just statement and account of all moneys, property, choses in action and securities heretofore placed in the hands or under the control of said board, by the executors of the last will and testament of Emeline A. Taylor, deceased, and of their dealings with all trust funds and property which now are in their possession, or which have heretofore come into their possession, or under their control, from the time the same were placed in their custody by said executors to the time of such accounting; and said board of directors shall annually thereafter, at the term of said circuit court next preceding the time appointed for the annual meeting of such board, render to said court a full, accurate and just statement and account of all their dealings with said trust fund, and of all receipts and expenditures for or on account of said orphan asylum, for the year preceding said accounting, which said annual accounting shall include all such transactions and dealings from the time of the last account previously rendered.  The said circuit court is hereby authorized and empowered and required to compel said accountings to be made; and for that purpose shall have jurisdiction to order any or all members of said board of directors to appear before said court (at a time to be specified in such order) and produce the statements and accounts herein required to be made; and said court shall thereupon proceed, in a summary manner, to examine and investigate such accounts, and, for the purpose of ascertaining their correctness, and of correcting any errors therein, may take the testimony of any person or persons, whose attendance may be required and compelled by the usual process of subpœna and attachment.  Said court shall have full power to revise and correct said accounts in all particulars, and to compel any member of said board of directors who may have in his or her possession any moneys or property belonging to said orphan asylum, to pay over and deliver the same to said corporation, and shall make such order in the premises as will fully protect the fund created by said will,

In re The Taylor Orphan Asylum.

pel the board of directors of the *Taylor Orphan Asylum* to ac-
count for the administration of the trust fund, and to audit
and correct their accounts. The facts are fully stated in the
opinion. The court ordered the directors *Kelley* and *Van Pelt*
to pay to the *Orphan Asylum*, severally, certain sums of money
by them respectively received as profits on the purchase and
sale of certain real estate forming a part of the trust fund ; from
which order they separately appealed to this court.

*L. S. Dixon*, of counsel for appellants :

1. Ch. 81, Laws of 1874, gave the circuit court no jurisdic-
tion to direct or entertain the proceedings culminating in the
judgment appealed from. The authority conferred was limited
to revising the accounts of the members of the board of direct-
ors with the asylum, and to compelling them to pay over funds
belonging to the asylum. But the moneys ordered to be paid
over in this proceeding did not belong to the asylum, and
hence are not the proper subject of an accounting between the
parties, within the meaning of this statute. The sale and pur-
chase by appellants, conceding their relation to have been such
as to forbid their becoming purchasers under the established
rule in equity, were not absolutely void, but only voidable at
the election of the *cestui que trust.* This election could be en-

and as shall enforce the due execution and performance of the trusts there-
by declared.

"Sec. 2. No member of said board of directors shall be a party to, or in-
terested, directly or indirectly, in any contract or transaction with said
corporation ; and any contract or transaction in which any member of said
board may be so interested notwithstanding this prohibition, shall be null
and void and of no force against said corporation, as a party thereto, and
no money of said corporation shall be appropriated or paid on account
thereof; and any member of said board who shall become interested,
directly or indirectly, in any contract or transaction to which said corpo-
ration shall be a party in interest, with interest [?] to gain, directly or indi-
rectly, any benefit, profit or pecuniary advantage, shall be removed from
said board by said circuit court, and his or her place on said board shall
then be declared vacant by said court."

forced only by suit in equity, in the name of the *cestui que trust* against the trustees; and until an adjudication in such suit of the invalidity of the sale and purchase, the funds realized by the trustees on the resale at an advanced price were not moneys of the asylum, in the sense of the statute, of which an account could be taken under the statute. The statute was not designed to substitute a remedy for the action in equity, which existed before the statute, and to which resort must still be had. The summary proceedings given by this statute, without process or pleadings, were never designed to take the place of judicial investigation in due form of law upon matters of such importance. This appears as well from its particular language, as from the context and general subject matter. The jurisdiction of chancery is fixed and saved from legislative change by the constitution; and equitable remedies can not be thus broken in upon or cast away. It is submitted, then, first, that the statute can not be construed as contended for; and secondly, that, if susceptible of such construction, it is invalid. The circuit court was, therefore, without power to enter upon this investigation, or to pronounce this judgment as to the sale of the land, and the proceeding was *coram non judice* and void. And this objection was not waived because not taken in the court below, since it may be taken at any stage of the proceedings, and may be taken for the first time even on appeal. *Klaise v. The State*, 27 Wis., 463, and cases there cited. 2. Section thirty-eight of the will gave the fund to the executors, to be invested by them in trust to pay over the income only to the support of the asylum. The asylum has no right to the fund or · body of the property mentioned in that section, which belongs to the persons named as executors in their capacity of trustees, to be held and invested by them and their successors, to be appointed by the court of chancery, as long as the trust shall continue; and, being a trust for charitable purposes, it may continue forever. Such being the true construction of the will, the asylum is entitled to no part of the principal sum for which · the land was

sold, but only to its income, and the judgment is therefore erroneous. 3. Neither *Kelley*, as executor, nor *Van Pelt*, as director, was forbidden by law from becoming purchaser; and, the sale having been fairly conducted and the land sold for full value, it is valid. The relation of these appellants was not one of trust, within the equitable rule avoiding the sale, unless some fraud or unfair dealing is shown, operating to the injury of the *cestui que trust*. Nothing of the kind is even pretended, but, on the contrary, it fully appears that appellants were in good faith making every endeavor to promote what all parties considered to be the best interests of the asylum, by selling the land for the price obtained, which was understood by all. *Brannan v. Oliver*, 2 Stewart, 47; *Julian v. Reynolds*, 8 Ala., 680; *Harrington v. Brown*, 5 Pick., 519; *Stallings v. Foreman*, 2 Hill Ch., 401; *Lyon v. Lyon*, 8 Iredell Eq., 201; *Farnam v. Brooks*, 9 Pick., 212; *Bryan v. Duncan*, 11 Ga., 67. 4. Even in cases within the rule in equity, and where it applies in all its rigor, there exist exceptions. . If the contract is distinct and clear, ascertained after a scrupulous examination of all the facts, and there is no fraud or concealment, and no advantage is taken by the trustee of information acquired by him in his capacity as trustee, the transaction will be upheld. *Coles v. Trecothick*, 9 Ves., 235, 244. As observed by Lord ELDON in this case, the exception may be a difficult case to make out; but it is believed to be completely and satisfactorily made out in this instance, and that the transaction will stand the closest scrutiny of the court.

*Chas. E. Dyer*, for respondent, with *John T. Fish*, of counsel, argued as follows: 1. To the objection that the lands sold were devised to the executors in trust by the 38th section of the will, and not a part of the property of the Orphan Asylum, and not under control of the directors, they replied that it was entirely immaterial whether the land was sold by the executors or by the directors. In either case it was the duty of appellants, as directors of the asylum, to see to it that the land brought the highest price; for the asylum would be entitled to

the income arising from the purchase money for its support and maintenance. Their individual interest would prompt them to purchase as low as possible; and thus their duty as trustees and their interest as individuals would be in direct conflict, which is the true test to be applied. 2. The appellant *Kelley*, occupying the two-fold relation of executor of Mrs. Taylor's will and director of the asylum, and *Van Pelt*, standing in the trust relation of director, were legally disabled from purchasing or becoming personally interested in any of the property of the asylum, or in which it was interested. Having, in violation of this principle, become purchasers and made large profits thereby, they are liable to account for and pay over to the asylum the profits thus realized, which constitute a part of the trust fund. The executors as trustees could not purchase, because it is their duty to see that all the profits go to the orphan fund, and that the largest possible price be obtained for the benefit of that fund. The directors are charged with the preservation intact and proper application of the same fund, and with seeing that the executors do not impair it. It is therefore absurd for equity to say that the executors as trustees could not buy because of their relation to the fund and its objects, and yet on the other hand to protect the directors in an individual profit, in spite of their occupying the same relation, and being charged with the same duties, and responsible for preserving the same funds. In support of these propositions, see *Michoud v. Girod*, 4 How. (U. S.), 503; *Van Epps v. Van Epps*, 9 Paige, 238; *Woodruff v. Cook*, 2 Edw., 259; *Davoue v. Fanning*, 2 Johns. Ch., 251; *Hawley v. Cramer*, 4 Cow., 717; *Ex parte James*, 8 Ves., 337; *Cumberland Coal and Iron Co. v. Sherman*, 30 Barb., 553; *Att'y Gen. v. Earl of Clarendon*, 17 Ves., 491; *Verplanck v. Mercantile Ins. Co.*, 1 Edw., 84; *Abbott v. American Hard Rubber Co.*, 33 Barb., 578; *Bostwick v. Adams*, 3 Coms., 53; *Pickett v. School District*, 25 Wis., 551. Under these authorities, even if appellants purchased the property in good faith, and paid what they believed to be the fair market

value, they are still liable to account for the profits realized from the purchase.

RYAN, C. J.    Emeline A. Taylor, of Racine, by her will, bequeathed a large sum of money to certain ladies, in trust, to erect and support an orphan asylum in that county; to be paid to the asylum when incorporated and empowered to receive it; and her residuary devise was to her executors (of whom the appellant *James H. Kelley* was one), in trust for the maintenance of the asylum.    The will gave power to the executors to sell real estate.

The ladies named in the will were incorporated by ch. 340 of 1867, amended by ch. 192 of 1868, and ch. 81 of 1874, to establish and maintain the asylum; and the corporation was authorized to receive all bequests of the will for the asylum. The corporation is the respondent in these appeals.

Upon due submission of the question by the executors and the corporation, the circuit court of Racine county adjudged the corporation entitled to receive and administer the residuary bequest.    And the fund, to a large amount, has been paid by the executors to the corporation.

As early as 1873, the controversy involved in these appeals arose, touching the alleged liability of these appellants and John G. Meacham, then directors of the corporation, to the corporation, for profits made by them individually from a transaction in real estate of the testatrix, appertaining to the residuary bequest of the will, under a sale by the executors.

Ch. 81 of 1874 requires the board of directors of the corporation to render annual accounts of the administration of the trust fund to the circuit court of Racine county, and makes it the duty of that court to enforce, audit and correct such accounts.

These appeals are from an order of the circuit court, made upon such accounting, adjudicating the appellants liable, and ordering them to pay to the corporation, severally, certain sums, being their respective profits in the transaction in question.

The appellants deny that the special jurisdiction conferred by the statute on the circuit court can cover the case set up against them. And that is the first question which presents itself for our decision.

I. It was argued with great acuteness and ability, that the act of 1874 is not broad enough to reach this case; that the principal provision is for a settlement of the accounts of the board of directors, expressly limited to funds actually received from the executors under the will; and that the authority to compel individual directors to pay over to the corporation is incidental and ancillary to the principal provision, and therefore subject to the same limitation. In other words, the argument is, that as, on the accounting, the board can be held liable only for what it has received from the executors, individual directors can be held liable only for what the board has so received, and not for any part of the fund which they may have received but the board has not.

We are not prepared to sanction so narrow a construction of the statute. There are several distinct clauses in that part of the first section providing for the accounting. The first relates to the first account, from the beginning to its date, to be rendered by the board of directors at the next term of the circuit court; the second, to the annual account to be rendered thereafter; the third, to the jurisdiction of the court to enforce, receive and investigate the accounts so to be rendered; and the fourth, to the power and duty of the court, upon the accounting.

The authority conferred on the court by the statute is essentially equitable. Account is an ancient and familiar branch of equitable jurisdiction. In cases of charity, to be administered by trustees, whether private persons or corporations, a court of equity has jurisdiction, at the instance of the attorney general or other proper party, to take an account, and to correct abuse or misuse of the trust funds; and even to remove delinquent or improvident trustees. Story's Eq., § 1191. And

the authority, in this statute, is also visitatorial. For the court puts itself in motion, without suit or suitor; and this, not blindly or arbitrarily, but in conformity with wise and settled usage. This is an eleemosynary corporation. In the absence of a visitor of right or by appointment — as seems to be the case here, — the visitatorial power would probably devolve upon the state, and be exercised by or under the authority of the circuit court. Angell & Ames, §§ 694, 695.

So the statute under consideration does not confer the jurisdiction; it only gives the summary proceeding, in furtherance of a jurisdiction already inherent in the court. The scope of the summary proceeding certainly depends on the language used in giving it. But, unless the letter of the statute plainly limits the jurisdiction, we are disposed to hold it as broad as the jurisdiction of the court in a suit for an account of the trust fund against the parties before the circuit court on the accounting. We cannot think that, in giving this summary proceeding, it was the intention of the legislature to lessen or to cripple the inherent jurisdiction of the court to exact and enforce a full account and settlement of the trust fund.

It was not questioned on the argument, that a complaint in equity would lie, at the suit of the state or other proper plaintiff, against the corporation and individual directors, for an account and restitution to the trust fund, of moneys rightfully belonging to it and withheld or appropriated by the individual directors, although the moneys so diverted from the trust had never come to the possession of the corporation. And the precise question to be considered here is, whether the language of the statute includes or excludes that very jurisdiction of the court. We have no doubt that it was intended to include it, and we think that it does.

It is true that the accounts provided by the first and second clauses of the statute to be rendered by the board of directors, are of the funds actually received by it from the executors. It is not easy to see what other account it could render. The

board is the governing body · of the corporation, and what comes to the possession of the corporation comes to the possession of the board. What might be received or intercepted by a director, and not paid over to the corporation, could not well be included in the account of the board. It ought to be in the account; but the court, not the board, has power to put it there. Doubtless it would be the duty of the board to notify the court of any such known delinquency; but it can only account for what it has received, not for what it ought to have received and has not, without fault of its own.

This is the account which the third clause of the statute authorizes the court to enforce and investigate. It is not to be supposed that a delinquent director would volunteer an account against himself; and, if he should, it might enlighten the court, but could not add to its authority. Therefore the only account which the board could render, is the account which the court is to investigate. It could not well be otherwise. And broad powers of investigation are given; indeed all the power of the court seems applicable to the investigation. Amongst these is the power to summon and examine the members of the board individually.

Then comes the fourth clause, giving the power of the court to adjudicate upon the accounting and investigation. The court has full power to revise and correct the account in all particulars, and to compel any director who has money or property belonging to the asylum, to pay or deliver it to the corporation. So far as the board and its account are concerned, the power to revise and correct seems to be all-sufficient. If the board should have failed to charge itself with anything received, or should have credited itself with anything not paid or wrongfully paid, or should have made itself accountable for anything lost to the fund by its laches or misfeasance, or should have made other error of omission or commission in its administration of the fund or in its account, the power to revise and correct gives ample remedy, and carries with it full authority

to enforce the revision or correction. Additional words of definition might impair, but could not well enlarge the power given. And the further power to compel a director who has assets belonging to the fund in his hands, to make payment to the corporation, not only does not go to enlarge the power of the court over the account of the board, but is manifestly foreign to it. It is a distinct and separate power. It is plain that the framers of the statute foresaw that individual directors might have in their hands money or property belonging to the trust fund, and withheld from it. This might happen in many ways. The object of the whole provision is the summary protection of the fund. And the statute providing for an annual and summary proceeding to ensure the integrity of the fund against the board itself, does not leave the recovery of assets of the fund intercepted or withheld by individual directors, to the discretion of the board or to the slower remedy of ordinary proceedings. That would have been at variance with its whole policy. It provides the same summary proceeding against individual directors, as it does against the aggregate board.

And the power given is not limited to assets belonging to the fund, received by the board from the executors, and held by individual directors under the board. There is, certainly, no such limitation in the letter of the statute, which includes anything belonging to the fund. And we cannot think that there is in the spirit and object of the statute. We see no reason for imposing such a limitation on the statute, against its letter. In a provision for the protection of the charity against personal malversation of the directors, there is certainly no good reason for distinction between assets derived by directors under the corporation and withheld from the board, and assets derived under the executors and intercepted from the corporation. Both cases are equally violations of official duty. The integrity of the fund is equally impaired in both; and the completeness of the summary remedy is dependent on reaching both.

Indeed, there is a peculiarity in the language used which may be accidental, but which seems to point directly to the liability, on the accounting, of individual directors for assets not realized by the board or received under its authority. For they are required to make satisfaction to the corporation, not for money or property belonging to the corporation, but for money or property belonging to the orphan asylum. The trusts of the will were created in view of a corporation, but not dependent on one. The trusts for the orphan asylum under the will preceded the corporation, and were independent of it. The distinction of phrase is, therefore, not a distinction without a difference. It may well be that the language of the statute was chosen, *ex industria*, to include all assets within the trusts of the will, coming to the hands of directors, whether or not they had before been reduced to possession by the corporation; and that therefore the terms of the statute, in providing for the liability of individual directors, on the accounting, go beyond the letter of the provision for the liability of the board itself. Indeed, it is difficult to resist the impression that the statute was framed in view of such cases as the present. It certainly includes them.

We have dwelt at this length on the construction of the statute, not for any inherent difficulty, but out of deference to the earnest and very able argument of the eminent counsel of the appellants.

II. But, conceding this construction of the statute, the position was taken that this case does not come within it, on another ground. It was urged, correctly as a general rule, that dealings by trustees for their own advantage in the subject of their trust are not void, but voidable only at the election of the *cestuis que trust*. And it was therefore contended that, taking this transaction at its worst against the appellants, it was not void, but voidable only at the suit of the corporation, and valid until so avoided; and that, not being so avoided, the

profits of the transaction were not moneys of the orphan asylum, within the statute.

It may well be doubted whether the rule relied on has any application in such a case as this; whether it is not confined to cases where the object is strictly the avoidance of the title acquired by the trustee, and the restoration of the thing itself to the trust. Where the trustee sells again, and there is no question of the restoration of the thing, the trust attaches itself to the trustee's profit on the transaction, and he is accountable for it to his *cestui que trust.* Story's Eq., §§ 321, 465. It is not easy to see, in such a case, what there is to avoid. But we prefer to rest this point on another ground.

Conceding the application of the rule otherwise, the difficulty of the argument is in its application to a charity. In case of a charitable trust, whether administered by natural persons or a corporation, all entrusted with the administration are trustees. "The beneficiaries are generally unknown, uncertain, changing, and incapable of taking or dealing with the legal title." Such are incapable of acting to protect the trust fund, or of electing to avoid voidable dealings of the trustees, or of proceedings in avoidance of them. Here, the corporation succeeded the trustees named in the will, and is charged with the administration of the charity under the will. It acts through its board of directors. And there is undoubtedly, subject to the trusts of the will, a fiduciary relation of the directors to the corporation; but the corporation is not a *cestui que trust;* it is itself a trustee. The desolate children for whom the beneficence of the testatrix makes provision, are the beneficiaries; and yet it cannot be said that they are, in legal sense, and as capable of acting in protection of the fund, *cestuis que trust.* Perry on Trusts, § 66. Undoubtedly the corporation could, in a proper case, maintain a suit to avoid a transaction of the character in question. But is the remedy limited to and dependent on the corporation, itself a fiduciary? We cannot think so. If it were so, the connivance or negligence of the corporation, not to speak

In re The Taylor Orphan Asylum.

of its own improvidence or malversation, might effectually waste the charity. *Quis custodiet ipsos custodes?* There should be a right somewhere; and there is. It is in the visitor. If there be no personal visitor, and we think that even if there be, it is in the state. And we have no doubt that it goes, under the statute, as part of the visitatorial duty delegated to the circuit court; the power on its own motion of protecting the trust fund. When a court of equity has the facts and the parties properly before it in one proceeding, it would be a departure from the uniform rule of equitable administration, to remit the subject and the parties to another proceeding before it, to obtain its decree. Equity favors no such circuity. If it were necessary to avoid the title of the appellants, there would have been neither need nor propriety in directing a proceeding by the corporation to that end, and in the meantime suspending a judgment which the court was then prepared to make. The corporation seems to have been passive. Some of the directors appear to have properly, but not necessarily, assumed the part of litigants. For, conceding that the transaction was voidable, and that the remedy depended on its avoidance, it was within the visitatorial and equitable power and duty of the court, on its own motion, on the accounting, to act for the charity and the founder, to avoid the transaction of a fiduciary of the charity in fraud of it. That is the duty of a visitor. That is the jurisdiction of equity. Angell & Ames, ch. 19, *passim.* Here the visitatorial power and the equitable jurisdiction met, under this statute, in the circuit court. And, in a proper case, it would be the duty of the court to avoid a voidable transaction of the directors, and to compel restitution or payment of the resulting liability. And the appellants cannot complain that they have not had their day in court. They were before the court under the provisions of the charter of a corporation of which they were voluntary officers, to account for their dealings with the trust fund administered by the corporation. They had the right to be heard, and were heard, as suitors in

their own behalf; and cannot now be heard to object to the summary proceeding to which they made themselves subject of their own choice.

III.   This brings us to the merits of the transaction in controversy.   A piece of real property belonged to the estate of the testatrix, which is conceded to have formed part of the residuary devise.   It is not material to consider the questions discussed at the bar, whether the corporation could take this property under the will, or whether the construction of the will by the circuit court covers the real estate.; because the executors actually sold this property, as they had undoubted power to do.

The executors put it up for sale at auction; and, receiving no satisfactory bid for it, directed their attorney, Mr. Fuller, to bid $20,000 for it on their behalf; and he was thereupon declared the purchaser.   This was not really a sale.   The property remained under the control of the executors, subject to the trusts and directions of the will.   But, for what reason is not apparent, the executors actually conveyed the land to Mr. Fuller.   This was an apparent, but not a substantial change of title; for the title of the attorney was in equity the title of the executors.   Mr. Fuller did not claim to be a purchaser for himself.   He could not rightfully have done so.   *Montesquieu v. Sandys*, 18 Ves., 302; *Cane v. Allen*, 2 Dow., 289; *Champion v. Rigby*, 1 Rus. & Myl., 839; *Edwards v. Meyrick*, 2 Hare, 60; *Leicester v. Black*, 5 Watts, 303; *Howell v. Baker*, 4 Johns. Ch., 118; *Hawly v. Cramer*, 4 Cow., 719.   He seems to have thought that, with the assent of the executors and of the corporation, he could have held the land for himself.   We think that he was mistaken, for they were only trustees themselves, without power of ratification to bind the charity.   But he acted with great propriety, held his title as the title of the executors, notified the corporation of his title and of his willingness to convey to it, and finally conveyed the land by order of the executors, upon their sale and on consideration paid to them.

His conveyance was made to Darwin Andrews, for the same sum for which he bid the land off at the executors' sale. Within ten months, Andrews sold the land for $40,000. It appears plainly in evidence, and was so found by the court below, that Andrews purchased the land at the instance and on the recommendation of the appellants; that he was unwilling to make so large a purchase for himself; and that it was understood between him and the appellants, before he purchased, that he was to be the actual purchaser of one-fourth only, they agreeing with him to find other purchasers for the other three-fourths; and that after his purchase, they proposed themselves and Meacham in that behalf, and that each of those three took a contract from Andrews for one-fourth of the land on payment of one-fourth of the price, and that each paid one-fourth of the money paid down to the executors on Andrews' purchase. After the resale by Andrews, each of the appellants and Meacham received one-fourth of the profit made. And the profits so received by the appellants are the sums adjudged by the court below to be paid over to the corporation. Meacham appears to have voluntarily made satisfaction for his share before the accounting.

Fuller's sale and conveyance were made in right of the executors. His sale was actually their sale; and his conveyance was, in legal effect, their conveyance. The sale and conveyance were for the benefit of the orphan asylum, which was entitled to the proceeds. And the sale and conveyance were made, in contemplation of law, to Andrews, *Kelley*, *Van Pelt* and Meacham; *Kelley* being one of the executors, and *Kelley*, *Van Pelt* and Meacham being directors of the corporation : all fiduciaries, owing a duty to obtain the highest practicable price, for the orphan asylum, for the very property of which they became purchasers.

Such a purchase by them is against the plain and salutary policy of the law, and cannot be sustained, when questioned on behalf of the charity. They took their profits on the resale, in

their fiduciary character towards the trust fund, and are accountable for them to the corporation charged with the administration of the charity. Their profits out of the trust property are, within the statute, moneys in their possession belonging to the orphan asylum.

Since the leading case of *Fox v. Mackreth*, 2 Cox, 320, and 2 Brown's C. C., 400, decided in 1788, the .rule which governs this case has been growing in stringency. For a time, it was confined to cases of undue advantage. Then it rested upon presumption of undue advantage, unless the trustee purchasing could make it appear affirmatively that he had acted throughout *uberrima fide:* a mitigation of the present rule still sometimes admitted. But we take the rule to be now very generally settled in this country, as it is well stated by WALWORTH, Ch., in *Torrey v. Bank of Orleans*, 9 Paige, 649 : "It is a settled principle of equity, that no person who is placed in a situation of trust or confidence to the subject of the sale, can be a purchaser of the property on his own account. The principle is not confined to a particular class of persons, such as guardians, trustees or solicitors, but is a rule of universal application to all persons coming within its principles, which is, that no party can be permitted to purchase an interest, where he has a duty to perform that is inconsistent with the character of purchaser." Or, as it was stated by PAINE, J., in this court: "The rule is well settled that trustees are not permitted to purchase the trust property ; not because they might not in many instances make fair and honest disposition of it to themselves, but because the probability is so great that they would frequently do otherwise, without danger of detection, that the law considers it better policy to prohibit such purchases entirely, than to·assume them to be valid except where they can be proved to be fraudulent." *Gillett v. Gillett*, 9 Wis., 194.

The vast number and variety of cases which have come within this rule, since *Fox v. Mackreth*, bear witness to its usefulness, and to the wisdom of the later stringency with which

it is applied.    It would be pedantic, in such a case, to cite par-
ticular authorities in detail, or to comment on them.    The
English cases are collected in White & Tudor's notes, and the
American in Hare & Wallace's notes, to *Fox v. Mackreth*,
in the valuable collection of Leading Cases in Equity of the
former authors.    And the rule has already been approved by
this court in several cases.    *Gillett v. Gillett, supra ; Puzey v.
Senier*, 9 Wis., 370; *Roller v. Spilmore*, 13 id., 26 ; *Pickett v.
School District*, 25 id., 551 ; *Stewart v. Mather*, 32 id., 344.

When such a rule has been so long and so wisely held to be
essential for the protection of *cestuis que trust* who are adult and
active members of society, how imperative its application is on
behalf of such a charity as this asylum, where the beneficiaries
are among the most helpless of God's human creatures, and
profit made in the administration of the trust property is bread
of life wrested from destitute infancy.

We rest this case on the strict rule.    We are not prepared to
say that the sum paid for the land by Andrews, Meacham and
the appellants was not a fair price at the time, or that Meach-
am and the appellants were conscious of impropriety in the
transaction, or that they took undue advantage of their relation
to the property; far less, that the transaction was tainted by
fraud in fact.    They probably thought that they were paying
fair value to the charity, and intended a fair operation in the
property, taking the risks of the speculation.    But they made
a grievous mistake of their duty, under a grievous misappre-
hension of the law.

It was urged for the appellants, against the charge of undue
advantage, that they had been zealous for the interest of the
orphan asylum in this very land; and that appears to be true,
especially of *Mr. Kelley*.    He seems to have been urgent that
the corporation should hold the land as an investment, before
he thought of being a purchaser himself.    Both appear to have
had the interests of the charity at heart.    And we cannot say
that they are not now standing on a point of pride ; litigating

the account in the hope of being justified in their conduct, and awaiting that result to make voluntary restitution, as their associate Mr. Meacham has done.    In the language of KENT, Ch., in *Howell v. Baker*, the most reasonable conclusion and the most honorable one to the appellants is, that they hold their profits from the trust estate for the orphan asylum, and are waiting an opportunity of accounting for them with a good grace.    But the judgment of the court cannot wait on so becoming a purpose.    It is our duty to enforce the equitable liability as it appears before us.    And restitution must be made to the trust fund.

*By the Court.* — The order of the court below is affirmed on both appeals.