GOULD, Adm'r, vs. THE TAYLOR ORPHAN ASYLUM and others.

WILLS: TRUSTS FOR CHARITABLE USES. *(1:1) When bequest not executory. (1:2) When bequest does not lapse because corporation not in esse: Power of circuit court in appointment of trustees. (2) When trust property treated as personalty. (3) Policy of this state as to bequests to charitable uses.*

1. Certain sums were bequeathed to persons named, in trust for the erection of an orphan asylum of a defined character at a designated place; the fund " to be paid to such asylum as soon as one [should] be duly incorporated and legally empowered to use said fund for the purposes specified." *Held,*

(1) That this was *not an executory bequest*, because the corporation was to take title, not by the will, but by transfer from the trustees.

(2) That the bequest would not have lapsed if no such corporation had been created; but the trustees *ad interim* would have remained permanently clothed with the trust, with full power to administer the charity; and in case of the refusal, resignation, incompetency or death of such trustees and their successors, the circuit court, in the exercise of its equitable jurisdiction, would have appointed others from time to time in their place.

2. The whole scope and tenor of the will showing that the power of sale given to the trustees was mandatory, the property which is the subject of the trust will be treated in equity as *personalty* only. *Dodge v. Williams, ante*, p. 70.

3. The doctrine of *Dodge v. Williams* as to the policy of this state in respect to bequests in trust for charitable uses, followed.

APPEAL from the Circuit Court for *Racine* County.

*Emerline A. Taylor* died in 1866, testate, being the owner in her own right of real and personal property valued at about $340,000; and, in December following, her will was admitted to probate in the county court of Racine county in this state (of which county she was a resident), and letters testamentary issued to the three persons named as executors therein. The third item of the will was in these words: " Third. I give and devise unto Mrs. C. A. Dyer, Mrs. Margaret Perrine, Mrs. George Murray, Mrs. John F. Gould and Mrs. John Tapley, of the county of Racine, state of Wisconsin, the sum of $30,-000, to hold in trust to erect an orphan asylum in or near the city of Racine, in the county of Racine, Wisconsin, and to support the same. Said asylum to be open for the reception of all orphan children in said county, and such other poor, neglected and destitute children as the managers, by law or by their rules, may agree to receive. Said trust fund to be paid to such asylum as soon as one shall be duly incorporated and legally empowered to receive and use said fund for the purposes above specified." There was a large number of bequests of specific sums of money, as well as two devises of land, all alike under the form, " I give and devise." The thirty-eighth item is in these words: " Thirty-eighth. All the rest and

residue of my estate left after paying the expenses of administration, I give and devise unto my said executors, Rhodes, Murray and Kelley (whether said estate shall consist of real estate, personal estate or mixed, or wherever situate), to hold in trust for said contemplated orphan asylum for said county of Racine; the principal to be kept invested in such manner as will pay a good interest, but not to be used for any purpose; the interest or income only to be used for the maintenance and support of said asylum. The same to be paid to said asylum by my said executors as hereinbefore directed. I also hereby authorize my said executors to sell, either at public or private sale, any or all of my real estate upon such terms as they shall deem best, and execute suitable conveyances therefor — such real estate as not herein specifically devised."

The ladies named in the third item of the will, above quoted, accepted the trust there defined, and procured the passage of an act of the legislature of this state (ch. 340, P. & L. Laws of 1867), incorporating them and their successors under the name of the *Taylor Orphan Asylum*. This act was subsequently amended by ch. 192, P. & L. Laws of 1868, and ch. 81, Laws of 1874. On the 27th of May, 1867, the executors of said will filed in said county court their petition representing, among other things, that they were prepared to pay " all the legacies named in said will except the residuary legatee," and praying for an order authorizing them to make such payments; and the county court, the same day, made the order prayed for. No notice of such application or order was given. On the 13th of February, 1868, the executors filed in the office of the county judge, full detailed accounts of their receipts from the sale of real and personal property, etc., and of moneys expended in administering the estate, and legacies paid, including $30,000 under the third item of the will, and $107,784.99 under the thirty-eighth item; and these accounts were recorded by order of the court. In December, 1871, the executors filed their supplemental account, from which it

appears that they had paid over to the treasurer of the *Taylor Orphan Asylum* the residue of the estate (over $15,000). On the 15th of November, 1877, the court made an order purporting to be a final order settling said estate, by which it confirmed the final accounting of the executors, directed payment by them to the *Taylor Orphan Asylum* of a balance of $1,000 in their hands, and discharged them from their trust upon such payment being made.

It appears that at Mrs. Taylor's death, she left, surviving her, her father, Abner Martin, who was her sole heir-at-law, and who died intestate, July 7, 1871, leaving children and other heirs-at-law. In January, 1878, *John F. Gould* filed his petition in the county court, in which he alleged, in substance, that he had been appointed by said court administrator of the estate of Abner Martin; that the *Taylor Orphan Asylum* was not entitled to receive the property described in the third and thirty-eighth items of Mrs. Taylor's will; that the petitioner, as such administrator, was entitled thereto; and that neither he nor the heirs-at-law of Abner Martin ever had any notice or knowledge of the order of the court making distribution of the estate of Mrs. Taylor, until long after the same was made, nor of any application being made by the executors or the *Taylor Ophan Asylum* for an accounting or a settlement of said estate, etc. He prayed, therefore, that the *Orphan Asylum* and the executors might be required to show cause why the previous order of said court for the final settlement and distribution of the estate should not be vacated, and a construction given to said will, and the rights of the petitioner as administrator determined, and an order made assigning to him the property mentioned in said third and thirty-eighth items of the will.

The *Taylor Orphan Asylum* and the executors answered separately. Their answers raised several issues besides that of the validity of the disputed legacies; but in view of the determination of this court, these issues need not be stated.

On the 8th of May, 1878, the county court vacated its order of November 15, 1877, so far as to permit said *John F. Gould*, administrator, etc., to be made a party to the final settlement of the estate, and present his claims in respect to the distribution thereof. On the same day said court made a further order, adjudging that said *Gould*, as administrator, was not entitled to the specific and residuary legacies mentioned in the third and thirty-eighth items of the will, and that the *Taylor Orphan Asylum* was entitled to them, and establishing and confirming the final order of distribution made in November previous.

From this second order of May 8, 1878, *Gould* appealed to the circuit court. That court held that the disputed bequests in the will were valid, and that the *Orphan Asylum*, " as trustee and successor in trust of the ladies mentioned in the third item, and of the executors under the thirty-eighth item of the will, is entitled to said legacies;" and it rendered judgment affirming the decree of the county court appealed from. From this judgment the administrator, *Gould*, appealed.

*S. B. Van Buskirk* and *E. Van Buren*, for the appellant, argued, 1. That the third and thirty-eighth items of the will were void for want of any sufficiently ascertained beneficiary. Charitable bequests stand upon the same ground as other trusts. It is not enough that there are trustees. Where trustees are appointed who are not capable of taking, or where there are no trustees, yet if there are beneficiaries capable of receiving the benefits, courts will enforce the charities by appointing trustees; but in the absence of certain and defined beneficiaries, the bequest is void, although valid trustees are appointed by the will. Here were no beneficiaries in being. An asylum was to be erected when one should be incorporated. But suppose one should never be incorporated; who then would get the money? Who could enforce the procurement of an incorporation? Who could enforce the provisions of the will? Again, the asylum was to be for orphans and

"other poor and destitute children." What are neglected children? Who are poor children? Where are they, and how are they to be ascertained? And the use of the asylum was left to the discretion of "the managers," an unknown body not yet in existence. Thus the objects of the bounty of the testatrix are left so vague and undefined, that the court cannot enforce the will. In support of this view, counsel cited *Downing v. Marshall*, 23 N. Y., 367; *Beekman v. Bonsor*, id., 311; *Levy v. Levy*, 33 id., 102, 107; *Bascom v. Albertson*, 34 id., 584; *Holmes v. Mead*, 52 id., 332; *Wheeler v. Smith*, 9 How., U. S., 55, 76, 80; *Fontain v. Ravenel*, 17 id., 369, 396, 399; *Lepage v. McNamara*, 5 Iowa, 124. 2. That the provisions of the will here in question were also void because they violated the rule of the common law against perpetuities. Lewis on Perpetuities, ch. 12, *163; Sanders on Uses and Trusts, 196–7; Perry on Trusts, 381–4; *Leonard v. Bell*, 1 N. Y. Sup. Ct. R., 608, affirmed in 58 N. Y., 676, and cases there cited. 3. That those provisions were void under our statute of uses and trusts. *Ruth v. Oberbrunner*, 40 Wis., 238; *Heiss v. Murphey*, id., 276. The statute applies to *personal* as well as to real property. This is conceded even in *Williams v. Williams*, 8 N. Y., 524, which held, however, contrary to the later decisions, that the statute did not apply to *charitable* devises or bequests. Comparing sec. 55, ch. 1, art. II of the N. Y. statutes of 1846, with sec. 11, ch. 84, Wisconsin R. S. of 1858, it will be seen that the latter provides (subd. 5) for an additional class of express trusts,[1] not referring specially to real estate, and intended apparently to enlarge the domain of the statute and make it cover, if possible, every species of active trust not already provided for, and thus put this question forever at rest in this state.

*John T. Fish*, with *L. S. Dixon*, of counsel, for the

[1] "5. For the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, *subject to the limitations as to time* prescribed in the preceding chapter."

respondents, contended that the executors under the thirty-eighth item, and the ladies named in, and the corporation contemplated by, the third item, are trustees designated to administer the charity, and the classes of children to be supported by the charity are the beneficiaries. *In re Taylor Orphan Asylum*, 36 Wis., 534. They then contended for the following propositions of law, and argued at length their application to the will in question: The statutes of mortmain are not in force in this state. 2 Black. Com., 274, note; 2 Redfield on Wills, 515; *Mackintosh v. Townsend*, 16 Ves., 338; *Att'y Gen. v. Stewart*, 2 Meriv., 161. The Stat. 39 and 40 Geo. III, c. 98, commonly called the Thellusson Act, was wholly English, dictated by considerations of local policy, and did not extend to Scotland, Ireland or the colonies. *Odell v. Odell*, 10 Allen, 6, and cases there cited. The property bequeathed by the two items of the will in question is personal estate. The direction in the 38th item to sell the real estate is in equity a conversion of the realty into personalty. Story's Eq. Jur., § 793; *Phelps' Ex'r v. Pond*, 23 N. Y., 69; *Craig v. Leslie*, 3 Wheat., 563. The statute of uses and trusts of this state (ch. 84, R. S. 1858) applies only to real estate, and not to personal property. This statute is the same as that of New York, except subd. 5, sec. 11, which is not found in the statutes of that state. This statute had received judicial construction in New York before it was adopted here. *Kane v. Gott*, 24 Wend., 641; *Holmes v. Mead*, 52 N. Y., 332. The statute against perpetuities (sec. 15, ch. 83, R. S. 1858) applies only to real estate. In the state of New York there is a statute against perpetuities in personal property (1 R. S. N. Y., 773, secs. 1 et seq.), which statute contains no exception in favor of bequests to charitable uses; therefore it is held in that state that there can be no bequest to a charitable use except it be to a corporation specially authorized to take and hold in perpetuity, the charter of which is then regarded as a repeal *pro tanto* of the statute against perpetuities. *Levy v. Levy*, 33

N. Y., 124–130; *Bascom v. Albertson*, 34 N. Y., 598. The common-law rule against perpetuities does not apply to gifts for a charitable use. Perry on Trusts, §§ 384, 736–8; *Cary v. Abbot*, 7 Ves., 490; *Odell v. Odell*, 10 Allen, 1 and 6, and cases there cited; *Ould v. Washington Hospital*, 5 Otto, 303, 311; 2 Redfield on Wills, 546. A gift may be made to a corporation for a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance in perpetuity to a prior taker. Perry on Trusts, § 736; *Odell v. Odell*, 10 Allen, 1, and cases there cited; *Inglis v. Sailors' Snug Harbor*, 3 Pet., 99; *Ould v. Washington Hospital*, 5 Otto, 303, 311, and cases there cited. If a gift is made in the first instance to an individual, and then over, upon a contingency which may not happen within the prescribed limit, to a charity, the gift to the charity is void, not because the charity could not take at the remote period, but because it tends to create a perpetuity in the individual who is the first taker, by making the estate inalienable by him beyond the period allowed by law. *Company of Pewterers v. Christ's Hospital*, 1 Vern., 161; *Commissioners of Donations v. Cotter*, 1 Drury & Warren, 498. If a devise in fee for the benefit of a charity is accompanied by an executory devise over to individuals or a corporation, upon the happening of a contingency which may possibly not occur within the time prescribed by the rule against perpetuities, the devise over is void, and the title of the first taker is absolute. *Wells v. Heath*, 10 Gray, 25, 26; *Odell v. Odell*, 10 Allen, 7. The common law authorized gifts of personal property for charitable uses without restriction or limitation. 2 Redfield on Wills, 515; Williams on Personal Prop., 381, *270. To make a charitable bequest it is essential that the use be shifting. It is essential that the beneficiary be a class or classes of persons, the individuals constituting which are *uncertain;* otherwise the trust is a private and not a public trust, however numerous the

individuals benefited may be.    Perry on Trusts, § 710; *Att'y Gen. v. Merrimack Mfg. Co.*, 14 Gray, 586; *Att'y Gen. v. Federal Street Meeting House*, 3 Gray, 1; 2 How., 127; 2 Redfield on Wills, 504 et seq.    Where a bequest is made to trustees to establish or endow a hospital, college or asylum, no particular description of the classes of persons to be admitted is necessary.    *Ould v. Washington Hospital, supra*, and authorities cited at p. 311.    A gift to trustees for a charitable use with a *general description of the class* from which the individuals to be benefited are to be selected by the trustees, is valid.    Perry on Trusts, §§ 699, 720, 731-2, and authorities there cited; 2 Redfield on Wills, 506, 541, 545, and authorities there cited; Story's Eq. Jur., §§ 1164, 1169, 1181, 1190.    A trust will never fail for want of a trustee.    It is therefore entirely immaterial that the testator adopts an impossible method of selecting successive trustees, or provides that the trust shall be administered by a corporation not in existence and which may never be created. Perry on Trusts, § 722; 14 Pick., 240, 253; 2 Redfield on Wills, 536; 2 Story's Eq. Jur., § 976.    Charitable uses are favorites with courts of equity, and they will so construe a will, if possible, as to sustain a charitable bequest.    Perry on Trusts, § 709; *Mills v. Farmer*, 19 Vesey, 487; *McGill v. Brown*, Brightly (Pa.), 346; *Chapman v. Brown*, 3. Burr., 1634; *Inglis v. Sailors' Snug Harbor*, 3 Peters, 117, 118.    If the court can see a general intention, consistent with the rules of law, but which the testator has attempted to carry into effect in a way that is not permitted by law, the court is to give effect to the general intention, though the particular mode shall fail.    *Thellusson v. Woodford*, 4 Vesey, Jr., 227, 329; 1 P. Wms., 332; 2 Brown's Ch., 51; *Chapman v. Brown*, 3 Burr., 1634; *Bartlet v. King*, 12 Mass., 543; *Findlay v. Riddle*, 3 Binn., 162; *Inglis v. Sailors' Snug Harbor, supra*.    The jurisdiction of courts of equity over charitable bequests does not depend upon the statute of 43 Elizabeth.    Courts

of chancery have an original and necessary jurisdiction over bequests for charitable uses, where they are made to trustees capable of taking the legal title, and the general object of the charity is specific and certain, or when some mode is adopted of rendering it certain. A. & A. on Corp. (9th ed.), 183, and authorities there cited; 2 Redfield on Wills (3d ed.), 554 et seq., 508, and cases there cited; *Ould v. Washington Hospital, supra;* Story's Eq. Jur., § 1191.

The following opinion was filed January 14, 1879:

COLE, J.   With the views taken of this case, it is unnecessary to consider the question of estoppel presented by counsel. All the other questions argued are also in *Dodge v. Williams, ante,* p. 70. The judgment of that case was postponed, and this advanced on the calendar, that the court might have all the light which the double argument could give.

It would, of course, be mere waste of time to consider at length in each case all the questions common to both. *Dodge v. Williams,* being the earlier case, was therefore selected for the general discussion of the questions. And what is said in that case, appropriate to this, will apply here without repetition.

Had the incorporation of the Orphan Asylum failed for any reason, the trust would not have lapsed. The ladies appointed by the will trustees *ad interim* of the charitable use, took power to administer the trust until a corporation should be created for that purpose. Failing the corporation, they would have remained permanently clothed with the trust, with full power to administer the charity. Some or all of them might have declined; some or all of them might have resigned, or become incompetent. All of them would probably have died, pending their trust. But equity never suffers a trust to expire with the trustee. And upon default of any or all of these ladies, or of their successors, by refusal, resignation, incompetency or death, the circuit court would have undoubted equitable jurisdiction to appoint other trustees in their places, from

time to time indefinitely, to support the trust and give effect to the charitable use.

In this respect, the will in this case bears strong resemblance to that in *Inglis v. Sailors' Snug Harbor*, 3 Peters, 99. The devise there was to certain public officers by their official designations, as trustees of the charitable use; the will desiring them, in case they could not execute the trust without it, to apply for a statute creating them a corporation with power to act as trustee in their place. The trust was sustained by the court, and the case is approved and followed in *Ould v. Washington Hospital*, 5 Otto, 303.

The latter case was, perhaps, more like this. There the devise was to individuals as trustees, to be by them conveyed to a corporation when one should be created by law. The devise was upheld, the court remarking on one question much discussed in this case, and in *Dodge v. Williams*, and not expressly noticed in the opinion in that case: " In this case, the devise was in fee to two trustees and to the survivor of them. They were directed to convey the premises to an eleemosynary corporation for foundlings, whenever congress should create one which the trustees approved. If the will had been so drawn as itself to work the devolution of the title upon the happening of the event named, the clause would have been an executory devise. If the same thing had been provided for in a deed *inter vivos*, a springing use would have been involved; and such use would have been executed by the transfer of the legal title whenever that occurred. The testator chose to reach the end in view by the intervention of trustees, and directing them to convey at the proper time. This provision in the will was therefore a conditional limitation of the estate vested in the trustees, and nothing more. Their conveyance was made necessary to pass the title. The duty with which they were charged was an executory trust. Amb., 552. The same rules generally apply to legal and to equitable estates. They are alike descendible, devisable and alienable. *Croxall*

*v. Shererd,* 5 Wall., 268. When such uses are consummated and no longer *in fieri,* the law of perpetuity has no application. *Franklin v. Armfield,* 2 Sneed, 305; *Dartmouth College v. Woodward,* 4 Wheat., 518; *Perin v. Carey,* 24 How., 465. It is intended that what is given shall be perpetually devoted to the purpose of the giver."

So here, the corporation, when organized, takes title, not by the will, but by transfer from the trustee *ad interim.* This is not an executory bequest.

The same view is taken of the will in this case as of the will in *Dodge v. Williams,* that the whole scope and tenor of the will demonstrate that the power of sale was mandatory; and that it is therefore to be considered as a will of personalty only. In this view, the principles upon which the charitable bequests are sustained in *Dodge v. Williams* are as applicable to this as to that case.

In *Re Taylor Orphan Asylum,* 36 Wis., 534, the view of the court of the beneficent and admirable character of this charity is sufficiently indicated. In that view all the present members of the court heartily concur. It therefore affords the court 'much gratification to be able, without violation of statute or principle, to sustain the will and the charity created under it. In the present state of the law here, there is the same right to be charitable after death as during life. It would be sad enough to see this noble charity strangled in the house of its friends, and the orphans cherished by it, almost as a mother cherishes her little ones, turned adrift in the bleak world, to satisfy the greed of collateral next of kin, many or all of them already enjoying the bounty of the testatrix under the very will providing for the charity. It would be a reproach to the administration of justice, if the consecration of so fine a fortune to so holy a charity should fail on grounds purely technical.

*By the Court.*— The judgment of the court below is affirmed.

Lyon, J., took no part.