WEBSTER and others, Executors, etc., Appellants, vs. MORRIS and others, Respondents.

WEBSTER and others, Executors, etc., Respondents, vs. MORRIS and another, Appellants.

*April 10 — May 27, 1886.*

WILLS. *(1, 3:1) Misnomer: Latent ambiguity: Evidence. (2) Bequest to cemetery association. (3) Bequest to church: Charitable purpose: Certainty: "Resident poor:" Perpetuities. (4, 7) Word "heirs" construed. (5) Condition subsequent in terrorem: Fulfilment to be determined by executors. (6) Charitable purposes: Indefiniteness. (7) Bequest to "any heirs who are in need," etc.: Certainty. (8) Alternative uses, one being uncertain. (9) General language restricted by specific direction: Precatory words: Establishment of school: Charitable purpose: Certainty: Perpetuities. (10) Conversion of realty into money. (11) When executors to act as trustees. (12) How far English statutes in force.*

1. A bequest was made to the "Omro and Algoma Union Cemetery Association of Omro." There was no corporation of that name, but there were corporations called respectively the "Omro Cemetery Association" and the "Union Cemetery Association," both

Webster and others, Ex'rs, etc. vs. Morris and others.

| | |
|---|---|
| 66 | 366 |
| 115 | [10]123 |
| e115 | [9]129 |
| 115 | [9]134 |
| 115 | [9]135 |
| 115 | [12]139 |
| 115 | [9]146 |
| 116 | [5]671 |

having grounds in Omro. The members and incorporators of the latter included inhabitants of the towns of Omro and Algoma. *Held*, that extrinsic evidence of the above facts was admissible, and that the last-named corporation was the one intended.

2. A bequest of a sum not exceeding $2,000 to a cemetery association "for the purpose of assisting in building a chapel on or near the cemetery grounds," with a direction that if the association will not build such chapel then it use the income from the sum bequeathed in improving the grounds,— is valid.

3. A bequest of money was made to the "First Presbyterian Church of the Village of Omro," with directions that the sum bequeathed be kept as a perpetual fund for the use of said society, and that one half of the interest arising therefrom be used in defraying the expenses of the society, "and the balance distributed and used for the relief of the resident poor." *Held:*

(1) Extrinsic evidence was admissible to show that the "First Presbyterian Society of the Town of Omro" was intended.

(2) A beneficial interest vested at once in the church corporation, and the bequest violates no rule against perpetuities.

(3) The direction as to the relief of the resident poor was for a charitable purpose, referred to residents of the town of Omro and of the village included within its limits, and was sufficiently definite and certain to be carried into execution.

4. A bequest was made to each of the testator's two grandsons, to be paid when they arrived at a certain age, but it was provided that in case of the death of either of said legatees " without leaving an heir, and before the said legacies are paid to them or either of them . . . the surviving one shall be considered the first heir and have the share of the deceased one." One of the legatees died without issue before the death of the testator. *Held*, that such legatee died " without leaving an heir," within the meaning of the will, and that the other grandson took a vested interest in the sums bequeathed to both.

5. A bequest was made to the testator's grandson, the income of which was to be used for his support until a certain age, when the principal sum was to be paid to him " provided he has in the meantime learned some useful trade, business, or profession, and is of good moral character; my executors to determine whether said child has fully complied with said proviso," etc. *Held*, that the condition is not indefinite or uncertain, is not contrary to good morals or public policy, and is valid.

6. A direction that upon a contingency mentioned a certain sum be expended by the executors " for charitable purposes " at large, is too indefinite to be executed.

Webster and others, Ex'rs, etc. vs. Morris and others.

7. A bequest to the testator's two grandsons, to be paid when they should reach a certain age, provided that in case they should both die before reaching that age, without leaving an heir, the sums bequeathed should be "given to any of my *heirs* who are in need or not in very comfortable circumstances, as to my executors seems fit and proper." One of the grandsons died before the testator, and the other was the testator's sole heir at law. *Held:*

(1) The bequest to the needy relatives was for a charitable purpose, and was sufficiently definite and certain to be executed.

(2) The word "heirs" means those blood relations of the testator who, if both grandsons had died before him and without issue, would have been his heirs.

8. Where a bequest is for two or more alternative uses of a charitable nature, and one of them is void for uncertainty, the whole gift does not therefore fail.

9. A will directed that if the testator's estate exceeded the legacies therein mentioned the surplus should be used by the executors "in aid or encouragement of charitable purposes; and if in their judgment there should be a sufficient amount of said surplus, I would *recommend* that the same be used to establish a school . . . for the education of young persons in the domestic and useful arts." *Held:*

(1) The particular purpose indicated should control the general language, and the word "recommend" should be construed as a positive direction.

(2) The establishment of such a school is a charitable purpose.

(3) The direction is sufficiently definite and certain, and the bequest does not violate the rule of perpetuities. The legal title vests in the executors until they establish the school.

10. Where a will treats the whole estate as personal property, directing the payment of all gifts in money, the executors have authority, by necessary implication, to convert real estate into money.

11. Executors should administer the estate according to the will although the duties thereby imposed include such as are usually performed by trustees.

[12. How far the English statutes (and especially that of 43 Eliz. ch. 4) are in force in this state, considered.]

APPEALS from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced in the circuit court, for the construction of the last will and testament of Hiram W.

Webster, deceased, and for the advice and directions of the court upon certain questions submitted, and for such other or further instructions thereon respecting the execution of the trusts thereby imposed as may seem proper. The will was duly executed, and is in the words and figures following, to wit:

"I, Hiram W. Webster, of the village of Omro, Winnebago county, state of Wisconsin, being of sound mind and memory, and mindful of the uncertainties of human life, do make, publish, and declare this my last will and testament, hereby revoking all former wills, bequests, and devises by me made.

"*First.* It is my will that all my just debts, funeral expenses, and all other charges be paid out of my estate.

"*Second.* I give, devise, and bequeath to my beloved wife, *Louisa M.*, the sum of ten thousand dollars, to be paid out of my estate.

"*Third.* I further give, devise, and bequeath to my beloved wife, *Louisa M.*, my homestead of about six acres of land, know as 'Outlot No. seventy-five (75);' south of Fox river, in the village of Omro, Winnebago county, state of Wisconsin, together with all the appurtenances thereto belonging.

"*Fourth.* I give, devise, and bequeath to my beloved wife, *Louisa M.*, all the household furniture, beds, bedding, books, works of art, and other chattels, jewels, trinkets, personal ornaments worn or used by me or her, fuel, housekeeping provisions, and other consumable stores which shall be in or about my dwelling-house in said village of Omro at my decease, except money, securities for money, evidences of debts and of title, and accounts; and I also give, devise, and bequeath to my beloved wife, *Louisa M.*, my carriage horse, carriage, sleigh, harnesses, robes, bells, and cow, and the hay and grain on hand for feeding said horse and cow, which, with what I have heretofore given to her in this, my

will, I mean to be, and that she, my beloved wife, *Louisa M.*, accept the same, in full of her right of dower or third in my estate, and I give to her as above upon the express condition that she, my beloved wife, *Louisa M.*, shall give to my executors, when demanded, a release of all demands and claims of dower or thirds and otherwise of and against my estate, save what I have herein given her, except certain promissory notes which my beloved wife, *Louisa M.*, now holds, or which she may hold against me at my decease, which I will, wish, and direct shall be considered and treated a proper debt and claim in her favor against my estate, and the amount of said promissory notes paid her out of my estate.

"*Fifth.* I give, devise, and bequeath out of my estate not hereinbefore disposed of, to *Hiram W. Morris*, my grandson, and son of Delphina and *M. D. Morris*, the sum of ten thousand dollars; said sum to be invested and put to use, and the interest arising therefrom, or so much as said child's guardian and my executors, hereinafter mentioned, may consider proper and necessary, be used for the support and education of said child, and at his majority the unexpended interest from said principal sum be paid him, and the interest on said sum annually thereafter until he arrives at the age of thirty years, at which time I will and direct that my executors pay to said *Hiram Webster* one half of said ten thousand dollars, and one thousand dollars each year thereafter, together with all interest earned, until the balance of said ten thousand dollars hereby willed to him has been paid: provided, however, that said *Hiram Webster* has in the mean time learned some useful trade, business, or profession, and is of good moral character, my executors to determine whether said child has fully complied with said proviso before any payments from the principal sum are made to him.

"*Sixth.* I give, devise, and bequeath to Edward Morris,

my grandson, and son of Delphina and *M. D. Morris*, the sum of ten thousand dollars; said sum to be invested and put to use, and the interest arising therefrom, or.so much as said child's guardian and my executors, hereinafter mentioned, may consider proper and necessary, be used for the support and education of said child, and at his majority the unexpended interest from said principal sum be paid him, and the interest on said sum annually thereafter, until he arrives at the age of thirty years, at which time I will and direct that my executors pay to said Edward Morris one half of said ten thousand dollars, and one thousand dollars each year thereafter, together with all interest earned, until the balance of said ten thousand dollars hereby willed to him has been paid: provided, however, that said Edward Morris has in the mean time learned some useful trade, business, or profession, and is of good moral character, my executors to determine whether said child has fully complied with said proviso before any payments from the principal sum are made to him.

"*Seventh*. I will and direct that in case of the death of either child without leaving an heir, and before the said legacies are paid to them or either of them, that the surviving one shall be considered the first heir and have the share of the deceased one, under the same restrictions and upon the same conditions provided for said deceased one's share; but, in case of the death of both without leaving an heir, all remaining payments and legacies to revert back to my estate, and to be expended by my executors for charitable purposes, or given to any of my heirs who are in need or not in very comfortable circumstances, as to my executors seems fit and proper.

"*Eighth*. I give, devise, and bequeath to my son-in-law, *M. D. Morris*, one certain promissory note for one thousand dollars, given by him to me, dated November 29, 1878.

"*Ninth*. I give, devise, and bequeath to David Hudson,

of Hampton, Washington county, state of New York, the annual interest of two thousand dollars during his life, said annuity to be paid him annually; and it is my will and I direct my executors to put and keep said sum of two thousand dollars at interest at the best rate obtainable, reference being had to good security; and at his death I give, devise, and bequeath said sum of two thousand dollars to *Amanda Rice*, wife of John Rice, of the village of Omro, Winnebago county, state of Wisconsin.

" *Tenth.* I give, devise, and bequeath to *Lyman Coleman*, of Castile, Wyoming county, state of New York, *Henry Stearns*, and *Betsy Marshall*, wife of Edwin Marshall, of Omro, Winnebago county, state of Wisconsin, each the sum of five hundred dollars.

" *Eleventh.* I give, devise, and bequeath to my three sisters, *Anna Martin*, of Pike, *Emily L. Stearns*, of Warsaw, *Isabel Broughton*, of Covington, all of Wyoming county, state of New York, each one thousand dollars; and the surviving children of Lucy Hotchkiss, wife of Cornelius Hotchkiss, of Erie county, state of Pennsylvania, one thousand dollars, to be equally divided between them.

" *Twelfth.* I give, devise, and bequeath to the *Omro and Algoma Union Cemetery Association*, of Omro, Winnebago county, state of Wisconsin, the sum of one thousand dollars; which said sum I will and direct to be paid over to the proper officers of said association, for the purpose of assisting in building a chapel on or near the said association cemetery grounds, to be built of brick or stone, with a seating capacity to accommodate two hundred persons; but, in case said association will not build said chapel, then I direct and will the said sum of one thousand dollars to said association upon the express condition that said association put said one thousand dollars to use, and the annual interest arising therefrom be used by said association in improving their cemetery grounds. ·

" *Thirteenth.* I give, devise, and bequeath to the *First Presbyterian Church*, of the village of Omro, Winnebago county, state of Wisconsin, the sum of ten thousand dollars, upon the following conditions, to wit: That said sum be kept as a perpetual fund for the use of said society, and the interest arising therefrom one half to be used by said society in defraying the annual expenses, and the balance distributed and used for the relief of the resident poor.

" *Fourteenth.* It is my will, and I hereby instruct my executors, that one third interest in the partnership business of the firm of Webster & Co., of the village of Omro, remain in said business according to the terms and conditions of a certain contract between me, *Henry Scott*, and *E. C. Jones.*

" *Fifteenth.* It is my will, and I direct, that in case my estate exceeds the legacies mentioned in this, my will, that the surplus or remainder of my estate be appropriated and used by my executors in aid or encouragement of charitable purposes; and if in their judgment there should be a sufficient amount of said surplus, I would recommend that the same be used to establish a school in Omro, or some place in Winnebago county, Wisconsin, for the education of young persons in the domestic and useful arts; but in case there is not enough of my estate to meet the above legacies, that the deficit may be borne *pro rata* between the legatees, except my beloved *Louisa M.*

" *Sixteenth.* I will and direct that all legacies to my beloved wife, *Louisa M.*, be paid in full.

" *Seventeenth.* All legacies and bequests mentioned in this, my will, I will and direct be paid out of my estate within five years from my death, without paying any interest on said legacies.

" *Eighteenth.* I hereby nominate and appoint my beloved wife, *Louisa M.*, *Edward Sargent*, and *E. R. Hicks*, of Winnebago county, Wisconsin, the executors of this, my last will and testament; and hereby authorize and empower

them to compound, compromise, and settle any claim or demand which may be in favor or against my said estate, and to do and perform all things necessary and proper in the premises to carry out this, my will.

"In witness whereof, I have hereunto set my hand and seal this twenty-eighth day of November, 1883.

"HIRAM W. WEBSTER."    [Seal.]

The court found that the testator died May 14, 1884; that *Louisa M. Webster* was the widow of the testator; that Edward Morris died before the testator; that *Hiram W. Morris*·was an infant grandson of the testator, and his sole next of kin or heir at law; that *M. D. Morris* was his father; that the copartnership mentioned in the fourteenth paragraph of the will expires by the terms of the contract in May, 1888; and that the debts of the testator amount to $22,551.03. The estate is said to consist of about $20,000 of real estate, and about $155,000 of personal property.

As conclusions of law the court found, in effect, that the real estate did not pass by the will, but descended to the surviving grandson; that the executors were to retain the legacies mentioned in the fifth, sixth, and seventh paragraphs of the will in trust, but that said grandson had a vested interest therein; that their discretionary power over the same, mentioned in the fifth and sixth paragraphs, and the contingent disposition mentioned in the seventh, in case of the death of both grandsons, were so vague and indefinite as to be wholly void, and hence such trust fund would, in case of the death of both of them, go to the executors; that the residuary provisions in the fifteenth paragraph were void for uncertainty; that the other bequests were valid; and that the personal estate which did not pass by the will should be distributed under the statutes.

From the judgment entered thereon the executors appeal, and the grandson, *Hiram W. Morris*, and his father, *M. D. Morris*, also appeal.

*George Gary* and *E. R. Hicks*, for the plaintiffs.

*Moses Hooper*, for the defendants *Hiram W. Morris* and *M. D. Morris:*

1. The circuit court properly held the discretionary power mentioned in the fifth and sixth clauses of the will too vague and indefinite to be enforced. *Ruth v. Oberbrunner*, 40 Wis. 238; *Heiss v. Murphey*, id. 276; *Wheeler v. Smith*, 9 How. 55. Conditions subsequent are not favored in the law. *Hartung v. Witte*, 59 Wis. 292; *Wier v. Simmons*, 55 id. 643; *Lawe v. Hyde*, 39 id. 360. Conditions which defeat the grant are void. *Green Bay & M. C. Co. v. Hewitt*, 55 Wis. 103, 104. This proviso should also be held void as *in terrorem;* especially as no succeeding estate is provided for in case there is a breach of the condition subsequent. *Otis v. Prince*, 10 Gray, 581; 2 Williams on Ex'rs, 1277; 2 Jarman on Wills, 51, 52.

2. The contingent disposition of $20,000 by the seventh clause is also void because too vague and indefinite to be enforced. One alternative use was not deemed charitable by the testator himself. He says "for charitable purposes, or given to any of my heirs," etc. A gift to one's heirs, though they be poor, is not charitable. *Chamberlain v. Stearns*, 111 Mass. 267; *Smith v. Harrington*, 4 Allen, 567; *Brunsden v. Woolredge*, Amb. 507; *Ommanney v. Butcher*, Turn. & R. 260; *Nash v. Morley*, 5 Beav. 177; *Widmore v. Woodroffe*, Amb. 636.

3. The bequests to the cemetery association and the church were void. The common-law rule against perpetuity in personal estates should be held in force in this state. *De Wolf v. Lawson*, 61 Wis. 469, 473–4; Perry on Trusts, secs. 379, 382; Pomeroy's Eq. Jur. sec. 1003; *Smith v. Harrington*, 4 Allen, 566–67. Charitable uses were excepted from the prohibition; but a cemetery association is not a charitable corporation, nor the improvement of its property a charity. *De Wolf v. Lawson*, 61 Wis. 469; *Hoare*

*v. Osborne,* L. R. 1 Eq. Cas. 585; *Dawson v. Small,* 18 id. 114; Perry on Trusts, secs. 697, 710; *Jackson v. Phillips,* 14 Allen, 539, 556. Nor is a religious society or corporation a charitable corporation or its general support a charitable use. *De Wolf v. Lawson, supra.* One half of the bequest to the "First Presbyterian Church of the Village of Omro" is to be distributed and used for the relief of the *resident* poor. There being no such corporation the court substitutes the "First Presbyterian Society of the Town of Omro." The town and village of Omro are not co-extensive. The court will take judicial notice that the village includes but a small part of the territory and about half of the population of the town. How shall it be determined whether the "resident poor" are of the town, or village, or church, or society? The power of applying charitable bequests according to the judgment of the court, under the principle called *cy pres,* does not exist in our courts. See cases cited *infra.*

4. The fifteenth clause is void for uncertainty. The power entitled *cy pres* no longer rests in our courts. *Ruth v. Oberbrunner,* 40 Wis. 257; *Heiss v. Murphey,* id. 292; Pomeroy's Eq. Jur. sec. 1027. The English statutes of mortmain are not in force in this state. Neither is the statute of 43 Eliz. ch. 4.[1] But if we follow the analogy of our

[1] Wisconsin became part of the Territory Northwest of the Ohio in 1787. Ordinance of 1787. By act dividing the Northwest Territory in 1800 it became part of the territory of Indiana. 2 Stats. at Large, p. 58. By act dividing the territory of Indiana in 1809 it became part of the territory of Illinois. 2 Stats. at Large, p. 514. By act dividing the territory of Illinois in 1818 it became part of the territory of Michigan. 3 Stats. at Large, p. 428. The last clause of sec. 7 of this act subjects Wisconsin to all Michigan statutes. Among them was an act of 1810 (see 1 Terr. Laws of Mich. p. 210) abrogating all English statutes. This Michigan statute was also adopted for the territory of Wisconsin by its organic act. 5 Stats. at Large, p. 10, sec. 12. See, also, Terr. Stats. of Wis. 1839, p. 407, sec. 8. This abrogation of English statutes was itself repealed by the R. S. of 1849, p. 750, line 6; but by sec. 5, ch. 157 (p. 757)

statute restraining perpetuity in estates in land, and hold charitable uses, here, now, to be confined to charitable and literary corporations, this bequest will fail. "Education of young persons in the domestic and useful arts" is not the business of a literary or charitable corporation. In whom does the residue vest under this clause? There is no devise or bequest to the executors. Is a corporation to be organized to take? Is there an equitable conversion of the real estate into personal property under the rule in *Dodge v. Williams*, 46 Wis. 70? Who should be admitted into this school? Who should be in charge of it? How much of a surplus is sufficient to make it incumbent upon the executors to establish it? If they do not think there is enough what shall they do with the surplus? Who shall call the executors to account for misappropriation or non-appropriation or fraud or concealment? What will prevent the executors from taking to themselves the whole of this residue? Where a gift is for two or more alternative uses, and one use would not sustain the gift, it fails. It must stand on the weakest alternative, or not at all. *Norris v. Thompson's Ex'rs*, 19 N. J. Eq. 311; *Nicholas v. Allen*, 130 Mass. 211; *Kendall v. Granger*, 5 Beav. 300; *Morice v. Bishop of Durham*, 9 Ves. Jr. 399; *Thomson v. Shakespear*, 1 De G., F. & J. 399, 406. Such bequests as this have been sustained, but only in states where the statute of Elizabeth has been held in force, or the *cy pres* doctrine has been acted on. *White v. Ditson*, 140 Mass. 351; *Saltonstall v. Sanders*, 11 Allen, 446; *Howard v. Am. P. Soc.* 49 Me. 302; *Swasey v.*

---

it was provided that "all statutes . . . abrogated by . . . any law hereby repealed . . . shall be deemed abrogated." See also Const. of Wis. art. XIV, sec. 13.

From this it seems that all English statutes are abrogated in this state. The decisions to the contrary seem to have been rendered without cognizance of this legislation. *Coburn v. Harvey*, 18 Wis. 147, 152–3; *Kellogg v. C. & N. W. R. Co.* 26 id. 223.

*Am. B. Soc.* 57 id. 523; *Cong. Soc. v. Cong. Soc.* 14 N. H. 315, 330; *Derby v. Derby*, 4 R. I. 414, 437–9; *McAllister v. McAllister's Heirs*, 46 Vt. 272, 280, 283–4; *Philadelphia v. Girard's Heirs*, 45 Pa. St. 9, 27, 28; *Moore's Heirs v. Moore's Devisees*, 4 Dana (Ky.), 354, 360, 365; *Gass v. Wilhite*, 2 id. 170; *Gilman v. Hamilton*, 16 Ill. 225, 228, 231; *Beal v. Fox*, 4 Ga. 404, 422; *Chambers v. St. Louis*, 29 Mo. 543, 582–4; *Academy v. Clemens*, 50 id. 167, 171; *McIntire's Adm'rs v. Zanesville*, 17 Ohio St. 352; *Le Clercq v. Gallipolis*, 7 Ohio, 218, 221. *Contra, Att'y Gen. v. Jolly*, 1 Rich. Eq. 99, 108; *Williams v. Pearson*, 38 Ala. 299. Wherever that statute has been abrogated and that power rejected, the rule has prevailed that a testator must himself make such specific and definite disposition of his property that the trust can be enforced by the court without the making of a will by the court or by the trustees. *Bascom v. Alberson*, 34 N. Y. 590, 592; *Holland v. Peck*, 2 Ired. Eq. 259–262; *Bridges v. Pleasants*, 4 id. 26, 30; *White v. Fisk*, 22 Conn. 53 (but see *Treat's Appeal*, 30 id. 113, 117); *Lepage v. McNamara*, 5 Iowa, 143–6; *Dashiell v. Att'y Gen.* 5 Harr. & J. 400–403; *Trippe v. Frazier*, 4 id. 446; *Wilderman v. Mayor of Baltimore*, 8 Md. 551; *Needles v. Martin*, 33 id. 609; *Norris v. Thompson's Ex'rs*, 19 N. J. Eq. 313, 314 (but see *De Camp v. Dobbins*, 31 id. 671, 694); *Morse v. Carpenter*, 19 Vt. 613; *Att'y Gen. v. Soule*, 28 Mich. 153, 157; *Grimes' Ex'rs v. Harmon*, 35 Ind. 198; *Dist. Col. v. Market Co.* 3 MacArthur, 559, 578; *Brown v. Caldwell*, 23 W. Va. 187; *Carpenter v. Miller's Ex'rs*, 3 id. 179, 180; *Gallego's Ex'rs v. Att'y Gen.* 3 Leigh, 450; *Literary Fund v. Dawson.* 10 id. 147; *Green v. Allen*, 5 Humph. 170; *Wheeler v. Smith*, 9 How. 55, 76; *Baptist Asso. v. Hart's Ex'rs*, 4 Wheat. 1; *Kain v. Gibboney*, 101 U. S. 362; *Fontain v. Ravenel*, 17 How. 369, 386; *Thomson v. Shakespear*, 1 De G., F. & J. 406–8; *Brown v. Yeall*, 7 Ves. Jr. 50.

CASSODAY, J. There is no bill of exceptions. The questions involved arise upon the face of the will, under the facts found by the court. No question is made as to the meaning or validity of paragraphs numbered 1, 2, 3, 4, 8, 9, 10, 11, 14, 16, 17, and 18 of the will. The other paragraphs only will be considered, and they not in the order in which they are named, but more in reference to their relations with each other.

1. In regard to the twelfth paragraph of the will, it was found by the trial court, as a matter of fact, that there was no corporation known as " The Omro and Algoma Union Cemetery Association," but that there was and is a corporation called the " Omro Cemetery Association," having cemetery grounds in said town of Omro; and also another corporation named " The Union Cemetery Association," having grounds in said town of Omro, and that the members and incorporators thereof included inhabitants of the towns of Omro and Algoma; and that the deceased members of the testator's family who died during his life were buried in " The Union Cemetery Association " aforesaid; and that said testator was also buried there. As a conclusion of law the trial court found that, by said twelfth paragraph of the will, the testator intended to give, and did give, the legacy of $1,000 therein mentioned to " The Union Cemetery Association " aforesaid, in trust for the alternative purposes mentioned, to be executed by the proper officers of said last-named corporation according to the conditions named in the will. We are clearly of the opinion that this was the true construction, and that the bequest is valid. There can be no doubt but what extrinsic evidence was admissible to show which of the two cemetery associations was intended. *State ex rel. State Agr. Soc. v. Timme,* 56 Wis. 423; *Begg v. Begg,* 56 Wis. 534; *Scott v. West,* 63 Wis. 551; *Begg v. Anderson,* 64 Wis. 207; *Cleveland v. Burnham,* 64 Wis. 355; *In re Brake,* 32 Eng. (Moak), 601; *Brownfield v.*

*Brownfield,* 51 Am. Dec. 590; *Hawkins v. Garland's Adm'r,* 44 Am. Rep. 158; *Tilton v. Am. Bible Soc.* 49 Am. Rep. 321; *Newell's Appeal,* 24 Pa. St. 197; *Minot v. Boston Asylum & F. S.* 7 Met. 416; *Howard v. Am. P. Soc.* 49 Me. 288; *Lefevre v. Lefevre,* 59 N. Y. 434; *Patch v. White,* 117 U. S. 210. Such evidence removed the latent ambiguity which otherwise would have existed. *Ibid.*

We have no doubt of the validity of that bequest. The corporation was capable of taking the beneficial interest in the bequest "for the purpose of assisting in building a chapel," as indicated. The statutes expressly authorize such corporations to take personal property by gift, to an amount not exceeding $10,000 in value, to be applied to promote the objects of the association. Sec. 1447, R. S.; ch. 42, Laws of 1882; ch. 165, Laws of 1885. The building of such chapel would certainly promote such objects. Under the statute as amended, " express trusts may be created," moreover, (6) for " perpetually keeping in *repair* and *preserving* any tomb, monument, or grave-stone, or *any cemetery,* to an amount not exceeding two thousand dollars; and any cemetery company, association, or corporation is authorized to receive money or property to the amount aforesaid, in trust for the purpose aforesaid, and to apply the income thereof to the purposes of the trust." Sec. 2081, R. S.; ch. 290, Laws of 1883. The bequest is within the amount named. If the association fails to build the chapel, then, under the will, it is to take the bequest in trust, and put it out at interest, and the annual interest arising therefrom is to be used by the association in improving the cemetery grounds. This is expressly sanctioned by this amendment to the statute.

2. In regard to the thirteenth paragraph of the will, it was found by the trial court that there was no corporation or society named the " First Presbyterian Church of the Village of Omro," but that there was and is an incorporated

religious society named "The First Presbyterian Society of the Town of Omro," with its church edifice in the village of Omro, in said town, and of which the testator was a member, and to the support of which he contributed, and that there was and is no other Presbyterian church or society in said town of Omro. As a conclusion of law, the trial court found that by said thirteenth paragraph of the will the testator intended to give the legacy of $10,000 therein mentioned to the "First Presbyterian Society of the Town of Omro;" that the same was and is an effectual bequest to said society, in trust for the purposes named therein; and that said trust is to be executed by the trustees of said society; and that by the words "the resident poor," at the close of said thirteenth paragraph, was and is intended poor persons at any time needing charitable relief, who are at such time residents of said town of Omro.

From what has already been said respecting the Omro Cemetery Association, it is obvious that extrinsic evidence was admissible to show the particular church or society intended, and thus remove the latent ambiguity otherwise existing. The bequest is directly to the society, with the directions "that said sum be kept as a perpetual fund for the use of said society, and the interest arising therefrom one half to be used by said society in defraying the annual expenses, and the balance distributed and used for the relief of the resident poor." By this clause the testator manifestly intended to create a trust in the church corporation "for the beneficial interests of" the church and the "resident poor" of the town. By the language thus employed, such trust was "fully expressed and clearly defined upon the face of the instrument creating it," and hence satisfied the requirements of subd. 5, sec. 2081, R. S. Still, by the express language of that subdivision, such trust is "subject to the limitations *as to time*, and the exceptions thereto relating to literary and charitable corporations, prescribed in

this [twentieth] title." "The limitation as to time" here mentioned refers to the statute declaring that "the absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate." Sec. 2039, R. S. "The exceptions thereto" mentioned, apply "when real estate is given, granted, or devised to literary or charitable corporations which shall have been organized under the laws of this state, for their sole use and benefit." *Ibid.* This court has held that a religious corporation, such as the trustees of a church, is not a charitable corporation, within the meaning of this statute. *De Wolf v. Lawson,* 61 Wis. 469. "There can be no question but the statute refers to real estate alone." Id. 474.

In *Dodge v. Williams,* 46 Wis. 70, the will contemplated the conversion of all the testator's realty into personalty by his executors, and then that the several trusts created thereby should be executed in personalty exclusively. In other words, the estate was treated as personal property, upon the doctrine of equitable conversion. But three of the bequests were to literary corporations expressly authorized to take in perpetuity by both sections of the statute cited, and another bequest was for the benefit of another corporation to be thereafter incorporated. In that case the late chief justice said that "the English doctrine of perpetuities applied to estates both real and personal, and grew up by a series of judicial decisions;" but that in this state "the statute limiting the rule against perpetuities to realty, manifestly abrogates the English doctrine as applicable to personalty. *Expressio unius est exclusio alterius.*" Pages 95, 96. These expressions of the late chief justice are referred to by the present chief justice in *De Wolf v. Lawson,* 61 Wis. 474, where he expressed doubt as to their being "strictly accurate." He then mentioned several reasons given by the courts in support of the common-law

doctrine as applied to personal property, and cites several text-books in support of such reasons, and concludes: "This common rule of perpetuity as to personalty may be unaffected by our statute."

In Gray's Rule against Perpetuities, just published, there is a pretty full discussion of the question. The rule is there said to "owe its birth, and the shape it has assumed, to executory devises of chattels real. . . . The natural, the original meaning of a perpetuity, is an inalienable, indestructible interest. The second, artificial meaning is *an interest which will not vest till a remote period.* The *latter* is the meaning which is attached to the term when the rule against perpetuities is spoken of. . . . It is to be regretted that the rule has not become known as the rule against remoteness. More than one erroneous decision would probably have been then escaped." Secs. 140, 589, 590, *et seq.* The learned author also said: "Whether future interests in a chattel remaining in the grantor, or limited over to a third person after a present gift, are within the rule against perpetuities or not, depends upon whether, for the purposes of the rule, they are to be deemed *vested or contingent.* All such interests, if contingent, are within the rule." Secs. 117, 320, 321, and cases there cited. But "a vested interest is not subject to the rule against perpetuities, for, *ex vi termini,* it is not subject to a condition precedent." Sec. 205.

The question when a bequest or legacy of personalty becomes vested, or is contingent, was pretty fully discussed, and numerous authorities cited, in the recent case of *Scott v. West,* 63 Wis. 565, 566, 571–573, where a similar distinction was made as to remainders. The following conclusions were there reached: "Bequests of legacies and personal property, when the payment or distribution is to be made at a future time, certain to arrive, and not subject to a condition precedent, are deemed vested when there is a person

in being at the time of the testator's death capable of taking when the time arrives, even though his interest is liable to be divested by dying without issue, or diminished by future births." See, also, *Pond v. Allen*, 4 East. Rep. 137. "In such cases the legacy or bequest takes effect, in point of right, on the death of the testator." Page 571. "On the other hand, legacies only payable on an event which may never happen, and hence subject to a condition precedent, are contingent." Page 566. Here the bequest to the church was not in any sense contingent, but immediately vested a beneficial interest in the church corporation. *Scotney v. Lomer*, L. R. 29 Ch. Div. 535. This being so, the rule against perpetuities or remoteness does not apply. See, also, Hawkins, 183, 206, 215, 224, and cases there cited. .

The direction in the clause of the will quoted, to distribute and use one half of the annual income of the bequest "for the relief of the resident poor" of the town, was clearly a charitable purpose. It included those who should be resident of the village as well as the town, and was sufficiently definite and certain to be carried into execution. *Howard v. Am. P. Soc.* 49 Me. 288; 2 Redf. on Wills, 504, subd. 15; *Swasey v. Am. B. Soc.* 57 Me. 523; *McIntire's Adm'rs v. Zanesville*, 17 Ohio St. 352; *Hesketh v. Murphy*, 36 N. J. Eq. 304; *S. C.* 26 Alb. Law J. 28, and 21 Am. Law Reg. 659; *State v. Griffith*, 2 Del. Ch. 392; *Ex parte Lindley*, 32 Ind. 367; *Craig v. Secrist*, 54 Ind. 419; *Shotwell v. Mott*, 2 Sandf. Ch. 46; 2 Perry on Trusts, 698. It was as definite and certain as "the annual income thereof to apply and use for the education and tuition of worthy indigent females," in *Dodge v. Williams, supra.* It is certainly distinguishable from the bequest to the unascertained and unascertainable "Roman Catholic orphans of the diocese of La Crosse," as in *Heiss v. Murphey*, 40 Wis. 276.

3. The grandson Edward Morris, mentioned in the sixth paragraph of the will, having died without issue and before

the testator, died "without leaving an heir," within the meaning of the seventh paragraph of the will; and the bequest, which would otherwise have gone to him under the sixth paragraph of the will, now goes, under the seventh paragraph of the will, to the surviving grandson *Hiram W. Morris,* under the same restrictions and upon the same conditions as to him, if valid, as was provided for said Edward had he continued to live; that is to say, said *Hiram W.* so takes what would otherwise go to said Edward under the same restrictions and upon the same conditions, if valid, as are applicable to the bequest to said *Hiram W.* under the fifth paragraph of the will. In other words, it is the same, in effect, as though the amount named in the fifth paragraph had been twenty thousand dollars instead of ten. So construed, the words " first heir," in the seventh paragraph, had the effect of carrying the bequest to Edward, on his death, over to *Hiram W.* The result is that $20,000 of said estate is to be invested and put to use, and the interest arising therefrom, or so much as said *Hiram W.'s* guardian and the executors named in the will may consider proper and necessary, be used for his support and education; and at his majority the unexpended interest from said $20,000 be paid to him; and also the interest on said sum annually thereafter, until he arrives at the age of thirty years; at which time one half of the $20,000 is to be paid over to him, and $2,000 each year thereafter, together with all interest earned, until the balance of said $20,000 be paid to him; unless the payment of such principal sum is defeated by his failure to perform the conditions therein provided, which will now be considered. Such trusts were in contemplation of the statutes, and hence permissible, even as to real estate. Sec. 2081, R. S.; *Scott v. West,* 63 Wis. 561. They were certainly permissible as to personal property. The bequests were vested upon the principles stated, and

hence not subject to the doctrine of perpetuities or remoteness.

4. The condition annexed to the bequest is that "provided, however, that said *Hiram Webster Morris* has in the mean time learned some useful trade, business, or profession, and is of good moral character; my executors to determine whether said child has fully complied with said proviso before any payments from the *principal sum* are made to him." The argument against the validity of this condition is that it is *in terrorem*, or against public policy. The authorities, however, seem to be strongly the other way. This is on the theory that every person has a legal right to dispose of his own property as he sees fit. Thus, conditions annexed to a devise or bequest from a husband to a wife, or a wife to a husband, to be held only so long as he or she remains unmarried, are quite common, and have frequently been held valid. *Allen v. Jackson*, L. R. 1 Ch. Div. 399, reversing the same case in 19 Eq. Cas. 631; *Pringle v. Dunkley*, 53 Am. Dec. 110; *Bostick v. Blades*, 59 Md. 231; *S. C.* 43 Am. Rep. 548. So, conditions that the devisee or legatee shall not marry prior to arriving at a particular age, without the consent of a person named, have been held valid. *Scott v. Tyler*, 2 Brown, Ch. 431; *Stackpole v. Beaumont*, 3 Ves. Jr. 97; *Hogan v. Curtin*, 88 N. Y. 162; *S. C.* 42 Am. Rep. 244. The age named must, of course, be reasonable; as, for instance, twenty-one years of age. But a condition annexed to a devise or bequest from parent to child in absolute restraint of marriage, has been held void, as against public policy. *Williams v. Cowden*, 13 Mo. 211; *S. C.* 53 Am. Dec. 143; *Randall v. Marble*, 69 Me. 310; *Otis v. Prince*, 10 Gray, 581. The same has been held where the devise or bequest was to a widow from her husband, and there was no gift over in case of breach of the condition. *Parsons v. Winslow*, 6 Mass. 169; *S. C.* 4 Am.

Dec. 107, and notes; *Crawford v. Thompson*, 91 Ind. 266; *S. C.* 46 Am. Rep. 598.

In *Cooke v. Turner*, 14 Sim. 493, the will contained a gift over in case the legatee should dispute the will or the testator's competency to make it, or should not confirm it when required by the trustees; and the condition was held valid.

In *Dickson's Trust*, 1 Sim. Ch. 37, the testator, by a codicil, annexed a condition to the bequest to his daughter to the effect that she should not take in case she became a nun, which she did; and it was held by Lord CRANWORTH that the condition was lawful, notwithstanding there was no gift over on its breach.

That case was followed in *Hodgson v. Halford*, L. R. 11 Ch. Div. 959, *S. C.* 32 Eng. (Moak), 918, where the condition annexed to the legacy was, in effect, that it should be forfeited in case the legatee married any person who was not a born Jew, professing the Jewish religion; and it was held valid, and not against public policy. It was there said that all the authorities holding the other way were "cases in which the condition was unquestionably against public morality, and it was on that ground that the court declined to give effect to it."

In the very recent case of *Delany v. Delany*, L. R. (Ireland), 15 Ch. Div. 55, the will provided: "If my said son Andrew shall in all respects conduct himself to the satisfaction of my executors, I bequeath to him a sum of 2,000 pounds, to be paid when my son Henry shall attain (or would have attained) his age of twenty-one years." He also devised and bequeathed the residue of his property to his executors, upon trust for the use and benefit of all his children, including his son Andrew, in equal shares; and declared that "if it should happen that my said son Andrew shall not conduct himself in all respects to the satisfaction of my said executors, or the survivor of them, then I declare that he shall not be

entitled to receive any portion of my said residuary estate; and in that case a declaration in writing signed by my said executors, or the survivors of them, of their, her, or his dissatisfaction with him, shall be conclusive evidence that he is not to receive any portion thereof, and the share to which he would otherwise be entitled shall thereupon go to, and be distributed among, my other children in equal shares." The executors who had qualified, certified that Andrew had not conducted himself to their satisfaction, and he made no denial of his misconduct. The condition was held valid.

In *Vidal v. Girard's Ex'rs*, 2 How. 128, it was held, in effect, that the provision in Mr. Girard's will excluding all ecclesiastics, missionaries, and ministers, of any sort, from holding or exercising any station or duty in the college, or even visiting the same, with the limitation of the instruction to be given to the scholars to pure morality, general benevolence, a love of truth, sobriety, and industry, were not so derogatory and hostile to the Christian religion as to make the devise void, under the constitution and laws of Pennsylvania.

It was recently held, in effect, in Maryland, that a bequest dependent upon the condition that the legatee should withdraw from the priesthood of the Roman Catholic Church, or membership of any order or society connected with such church, or refrain from forming any such connections, was held to be valid, and not against public policy, on the ground that whatever might be thought of the opinions of the testator, or his prejudices, the law recognized his right to make the enjoyment of his bounty dependent upon such conditions. *Barnum v. Mayor of Baltimore*, 62 Md. 291.

So, it has recently been held that a bequest on condition that the beneficiary shall be educated in the Roman Catholic faith, is not uncertain, impossible, nor against public policy, nor unconstitutional. *Magee v. O'Neill*, 45 Am. Rep. 765.

Here the principal sum bequeathed is to remain in the possession of the executors until the legatee becomes thirty years of age. His right to it at that time, and thereafter, is made dependent upon his being of good moral character and having in the mean time learned some useful trade, business, or profession, in the judgment of the executors. Without committing ourselves to the doctrine of all the cases cited, especially such as may be regarded as touching matters of conscience, we must hold that the clause in question is capable of performance by any person of ordinary intelligence, and not contrary to public policy. It is designed to put the beneficiary under wholesome restraint. It is not in contravention of good morals, nor any law, nor any matter of conscience, but is promotive of good moral character. It is in no sense indefinite nor uncertain. It is left to the determination of executors; but that does not give them the right to exercise an arbitrary power of exclusion, but only a reasonable exercise of judgment. Manifestly, the bequest to *Hiram W. Morris* is not to be held void on the ground of the probability or improbability of the contingency on which it is limited to take effect. Sec. 2050, R. S.; *Scott v. West*, 63 Wis. 595. The condition must therefore be held legal and binding.

5. The seventh paragraph of the will provides, in effect, that "in case of the death of both" Edward Morris and *Hiram W. Morris* "without" issue, then "all remaining payments and legacies" mentioned in the fifth, sixth, and seventh paragraphs of the will are to revert back to the estate, and be expended by the "executors for charitable purposes, or given to any of the testator's heirs who may be in need, or not in very comfortable circumstances, as to" said executors may seem fit and proper. Here are two alternative methods of expending such payments in case of the death of *Hiram W. Morris* before he reaches thirty years of age. The first is "for charitable purposes" gen-

390    SUPREME COURT OF WISCONSIN,

Webster and others, Ex'rs, etc. vs. Morris and others.

erally. 'An elaborate argument was made by counsel to the effect that although a bequest for such charitable purposes generally might have been carried into effect in England under ch. 4, 43 Eliz., yet that it cannot be carried into effect in this state, for the reason that that statute, and all other English statutes, were expressly repealed by our Territorial Statutes of 1839, p. 407, sec. 8. It is said that the numerous references to such English statutes as being in force in this state, in the decisions of this court, are all erroneous, and made through inadvertence. The conclusion we have reached in this case renders it unnecessary to determine that question here; but, in view of the discussion on both sides, it may not be out of place to make a few general observations in regard to it.

Sec. 8, p. 407, Laws of 1839, declared that "none of the statutes of *Great Britain* shall be considered as law of this territory, nor shall they be deemed to have had any force or effect in this territory since July 4, 1816." This same section was re-enacted in Iowa, July 30, 1840. The supreme court of that state, after suggesting the grave results of eliminating from the common law all of the old English statutes by reason of that section, finally concluded that the "statutes of Great Britain" therein mentioned did not include English statutes proper, which were enacted prior to "the union of the crown of England with that of Scotland" by act of Parliament in 1707, which was more than 100 years after the statute of Elizabeth. The statute of Elizabeth was, in fact, enacted prior to the accession of James, who was the first to recognize any such union. *O'Ferrall v. Simplot*, 4 Iowa, 381. This Iowa case was cited with approval by Mr. Justice PAINE in *Coburn v. Harvey*, 18 Wis. 150, although a later date was there fixed, and the precise point here presented was not considered. In addition to cases cited by counsel, see cases cited in 21 Am. Law Reg. 553-574. But as held in *Ruth v. Oberbrun-*

*ner,* 40 Wis. 238, *Heiss v. Murphey,* 40 Wis. 276, and *Dodge v. Williams,* 46 Wis. 70, the *cy pres* feature of the statute of Elizabeth was never in force in this state for another reason.   By that statute it was made lawful for the " Lord Chancellor, *as keeper* of the great seal, . . . to authorize four or more persons," in case of such general bequest, to devise and carry into execution a charitable scheme of the character indicated in the act.   2 Stats. at Large, 708. That was a prerogative power, exercised by the keeper of the great seal as the representative of the king, and not by him sitting merely as Chancellor.   But the courts of this state, as held in the above cases, have no such prerogative jurisdiction, but "only a strictly judicial power."   But in so far as that statute was merely confirmatory of such powers exercised by the Chancellor as were strictly judicial, it became, by judicial construction, interwoven in, and a part of, the common law of England, and to that extent is in force here.   *Vidal v. Girard's Ex'rs, supra; Howard v. Am. P. Soc.* 49 Me. 288; *Shields v. Jolly,* 1 Rich. Eq. 99; *S. C.* 42 Am. Dec. 349; *Derby v. Derby,* 4 R. I. 436; *Ex'rs of Burr v. Smith,* 7 Vt. 241; *McAllister v. McAllister's Heirs,* 46 Vt. 272; *Fontain v. Ravenel,* 17 How. 385 *et seq.; Ould v. Washington Hospital,* 95 U. S. 303; *Going v. Emery,* 16 Pick. 107; *S. C.* 26 Am. Dec. 645; *State v. Griffith,* 2 Del. Ch. 392; *Miller v. Chittenden,* 2 Iowa, 369 *et seq.; Williams. v. Williams,* 8 N. Y. 525; *Treat's Appeal,* 30 Conn. 113; *Williams v. Pearson,* 38 Ala. 299.

Before that power can be exercised, however, the scheme of charity must be sufficiently indicated, or a method provided whereby it may be ascertained, and its object made sufficiently certain to enable the court to enforce the execution of the trust according to such scheme and for such object.   It must be of such a tangible nature that the court can deal with it.   2 Redf. on Wills, 409, subd. 2–4; Id. 505, subd. 16.   The mere direction to expend money " for chari-

table purposes" *at large* is too indefinite and uncertain to be so carried into execution, under the rulings of this court in the cases cited, and hence that alternative must be held to be void for uncertainty. To the same effect, *Bridges v. Pleasants*, 4 Ired. Eq. 26; *S. C.* 44 Am. Dec. 94; *Nichols v. Allen*, 130 Mass. 211; *Prichard v. Thompson*, 95 N. Y. 76; *Fairfield v. Lawson*, 50 Conn. 501; *S. C.* 47 Am. Rep. 669; *Fontain v. Ravenel*, 17 How. 385 *et seq.*

6. Is the second alternative mentioned in the seventh paragraph of the will, to wit, "to be . . . given to any of my heirs who are in need, or not in very comfortable circumstances, as to my executors seems fit and proper," sufficiently definite and certain to be carried into execution? Ordinarily, a gift to the testator's heirs would, of course, be to those who would take under the statutes. *Edge v. Salisbury*, Amb. 70; *Isaac v. Defriez*, Amb. 595; *Widmore v. Woodroffe*, Amb. 636; *Smith v. Harrington*, 4 Allen, 566. But the words "my heirs" must be construed with reference to the context. Manifestly, the testator did not mean those who would have taken his property under the statutes had he made no will, for the two grandsons would then be included. But the clause in question is not to go into effect at all until the death of both of such grandsons without either of them leaving issue — that is to say, not until the death of his sole heirs at law. Besides, such alternative gift is not simply to heirs, or heirs generally, but "to *any* . . . who are in need, or not in very comfortable circumstances, as to my executors seems fit and proper." This manifestly means those who, upon the death of both of his grandsons without issue, would be his other blood relations, and who might, under the other circumstances named, have become his heirs. It does not include all relatives, however remote. *Edge v. Salisbury, supra; Brunsden v. Woolredge*, Amb. 507; *Isaac v. Defriez, supra; Widmore v. Woodroffe, supra; Smith v. Harrington, supra.* It only in-

cludes such of his blood relations as should then be in need, or not in very comfortable circumstances, and would take by descent under such other circumstances. Upon such relatives as should come within such description the executors were directed to bestow the bequest therein referred to, as to them might seem fit and proper. The limitation to such needy relatives, and those not in very comfortable circumstances, makes the bequest charitable in its purpose. *Edge v. Salisbury, supra; Brunsden v. Woolredge, supra; Isaac v. Defriez, supra; Widmore v. Woodroffe, supra; Mahon v. Savage,* 1 Schoales & L. 111; *Attorney General v. Duke of Northumberland,* L. R. 7 Ch. Div. 745; *Hesketh v. Murphy, supra; State v. Griffith, supra; Attorney General v. Price,* 17 Ves. Jr. 371. It is moreover sufficiently definite and certain to be carried into execution. *Ibid.; Beardsley v. Selectmen,* (Conn.) 3 Atl. Rep. 557; *Quinn v. Shields,* 62 Iowa, 129; *Sowers v. Cyrenius,* 39 Ohio St. 29; *De Camp v. Dobbins,* 29 N. J. Eq., 36; Gray's Rule against Perpetuities, secs. 683–685. Especially is this so where, as here, the bequest is charitable in its object, and to trustees for the benefit of a class with limited discretionary powers of selection. *State v. Griffith, supra; Ex parte Lindley, supra; Nash v. Morley,* 5 Beav. 177; *Treat's Appeal,* 30 Conn. 113; *Birchard v. Scott,* 39 Conn. 63; *Beardsley v. Selectmen, supra; Hesketh v. Murphy, supra; Miller v. Atkinson,* 63 N. C. 537; *McAllister v. McAllister's Heirs,* 46 Vt. 272; *Shotwell v. Mott, supra; Power v. Cassidy,* 79 N. Y. 602; *Saltonstall v. Sanders,* 11 Allen, 446; *Shields v. Jolly, supra; Goodale v. Mooney,* 60 N. H. 528; *S. C.* 49 Am. Rep. 334; *Derby v. Derby,* 4 R. I. 414; *Ould v. Washington Hospital,* 95 U. S. 303; 2 Perry on Trusts, sec. 732.

7. But it is claimed that where a gift is for two or more alternative uses, one of which is void for any reason, the whole gift fails. We do not think the authorities cited in support of the proposition sustain it. In *Morice v. Bishop*

*of Durham,* 9 Ves. Jr. 399, *S. C.* 10 Ves. Jr. 521, it was simply held that a bequest in trust for such objects of *benevolence* and *liberality* as the trustee in his own discretion should most approve, could not be supported as a *charitable* legacy, and was therefore held in trust for the next of kin. There was no alternative bequest. It failed because it was not a charitable bequest. Here it is a charitable bequest, and for the next of kin. In *Thomson v. Shakespear,* 1 De Gex, F. & J. 399, the gift was to be laid out " in forming a museum at Shakespear's house, in Stratford, *and* for such other purposes as my said trustees in their discretion shall think fit and desirable for the purpose of giving effect to my wishes." There was no alternative presented. It was held, in effect, that the bequest for the museum could not be sustained as a gift " for the benefit of private persons," and that the last clause, though general and discretionary, was so connected with the museum as to indicate the same general purpose, and hence could not be sustained as a charity. *Nichols v. Allen,* 130 Mass. 211, is to the same import. In *Kendall v. Granger,* 5 Beav. 300, there was a bequest of personalty to be " applied for the relief of domestic distress, assisting indigent but deserving individuals, *or encouraging undertakings of general utility,*" and the bequest was held void because the last alternative was not necessarily charitable. To the same effect was *Norris v. Thomson's Ex'rs,* 19 N. J. Eq. 307. The same principles are sanctioned in 2 Perry on Trusts, sec. 711, and cases there cited. Here both alternatives are charitable in their objects, and hence sustainable as such, and therefore the case is distinguishable from those cited in which one of the alternatives was not charitable.

8. By the fifteenth paragraph of the will the testator, in effect, willed and directed that in case his estate exceeded the legacies therein mentioned, then the surplus or remainder of his estate should be appropriated and used by his

executors in aid or encouragement of charitable purposes; and if, in their judgment, there should be sufficient amount of said surplus, then he recommended that the same should be used to establish a school in Omro, or some place in Winnebago county, " for the education of young persons in the domestic and useful arts." We have already seen that a bequest for " charitable purposes," standing alone, is too vague and indefinite to be carried into execution. This, as we have noticed, is upon the theory that courts are confined to the exercise of judicial powers, and hence have no authority to devise a particular scheme or plan of charity. But here the general words are followed by others indicating a particular scheme or plan for the expenditure. What effect is that fact to have upon the validity of the bequest? In *Thomson v. Shakespear, supra,* the general words which might otherwise have been construed to be charitable were restricted, by the words which preceded them, to the Shakespear premises. " It is a universal rule of construction, founded in the clearest reason," said BLACK, C. J., " that general words in any instrument or statute are strengthened by exceptions and weakened by enumeration." *Sharpless v. Mayor,* 21 Pa. St. 161. That rule has been applied by this court. *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 90, 91. Thus, according to Lord BACON, " all words, whether they be in deeds or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person." Broom's Leg. Max. 646. See, also, *Thorpe v. Thorpe,* 1 Ld. Raym. 235; *Moore v. Magrath,* Cowp. 9; *Roe v. Vernon,* 5 East, 51; *Morrell v. Fisher,* 4 Exch. 591; *Wood v. Rowcliffe,* 6 Exch. 407.

The same rule was recently applied to the description in a bill of sale in Minnesota. *McAlpine v. Foley,* 25 N. W. Rep. 452. " Thus the word ' benevolent,' intrinsically considered, includes more than legal charities, but its signification may be narrowed by the context " so as only to include

charities. *De Camp v. Dobbins*, 31 N. J. Eq. 671. So, it has been held in this state that where a power of attorney is given for a particular purpose, general words therein are not to be construed at large, but merely as giving general powers for carrying into effect the special purpose for which the power was given. *Rountree v. Denson*, 59 Wis. 522. It is now universally admitted that in construing a will the rule is to read it in the ordinary and grammatical sense of the words employed, unless some obvious absurdity, or some repugnance or inconsistency with the declared intentions of the testator, to be extracted from the whole instrument, should follow from so reading it. "Then the sense may be modified, extended, or abridged, so as to avoid those consequences, but no further." *Abbott v. Middleton*, 7 H. L. Cas. 115, and cases there cited. "Quite consistently with this rule, words and limitations may be supplied or rejected, when warranted by the immediate context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the instrument." *Ibid.; Thellusson v. Rendlesham*, 7 H. L. Cas. 494; *In re Northern's Estate (Salt v. Pym)*, L. R. 28 Ch. Div. 157; *Scott v. West*, 63 Wis. 551, 552.

Applying the foregoing principles to the paragraph of the will here in question, and assuming, for the present, that the establishment of a school of the character there indicated is a charitable purpose, then, as it seems to us, we are authorized to hold that the particular charitable purpose which the testator directed his executors to use such residue of his estate in aiding and encouraging, was in the establishment of such school. After expressing his "charitable purposes" generally, he recommends a scheme for its exercise in the establishment of the school, in case the amount of such surplus is sufficient for that purpose in the judgment of his executors. No other scheme is suggested, and,

as we have seen, the court is powerless to devise one. It follows that the intention of the testator, as expressed in that paragraph of the will, is to be wholly defeated, unless we construe the word "recommend" to mean something more than is ordinarily implied by it; and, in view of the context, and the authorities cited, we think we may give it the meaning of command or direction to use such surplus to establish the school in the event indicated. *Knox v. Knox,* 59 Wis. 172.

The language of the will seems to contemplate a school of the character indicated, to be incorporated. The mere fact that the corporation was not *in esse* on the death of the testator in no way frustrates the trust. To establish such a school is to give it a legal existence — that is to say, a corporate existence. *In re Taylor Orphan Asylum,* 36 Wis. 534; *Dodge v. Williams,* 46 Wis. 100–102; *Gould v. Taylor Orphan Asylum,* 46 Wis. 106; Gray's Rule against Perpetuities, sec. 607, and cases there cited. It is to be established by the executors in their capacity as trustees. It could not be established by executors until there were executors, and there could be no executors until the death of the testator. They are to appropriate and use such surplus funds as may be in their hands for that purpose in the event indicated. The authorities cited fully sanction the legality of such appropriation and use of funds by trustees in the establishment of such a school. The same authorities hold that such bequest is not void for remoteness, nor against the rule of perpetuities. *Santa Clara F. Academy v. Sullivan,* (Ill.) 6 N. E. Rep. 183. The legal title to such surplus estate is vested in the executors. *Scott v. West,* 63 Wis. 555. It will remain in them until they establish such school — that is, give it a legal corporate existence. It will then become vested in such corporation. Being thus continually vested, the doctrine of remoteness is inapplicable, upon the principles already suggested.

9. May the establishment of such a school be properly regarded as a charitable purpose? In *Kendall v. Granger, supra,* it was said by Lord LANGDALE, M. R., that a charitable purpose " must be either one of those purposes denominated charitable in the statute of Elizabeth, or one of such purposes as the court construes to be charitable by analogy to those mentioned in that statute." Among the "purposes denominated charitable" in that statute were gifts for "relief of aged, impotent, and poor people; " and for " schools of learning, free schools, . . . . scholars in universities; . . . education and preferment of orphans; . . . aid and help of young tradesmen, handicraftsmen," etc. 2 Stats. at Large, 708, ch. 4. So, according to Mr. Perry, charitable trusts include all gifts in trust for educational purposes in their ever-varying diversity, as well as gifts for the relief and comfort of the poor, the sick, and the afflicted. 2 Perry on Trusts, secs. 687, 697. In *Vidal v. Girard, supra,* it was held, in effect, that donations for the establishment of colleges, schools, and seminaries of learning, and especially such as were for the education of orphans and poor scholars, were charities, in the sense of the common law. Besides, it is to be a literary corporation, which, as well as charitable corporations, is excepted from the operation of the statute. Sec. 2039, R. S.; *Santa Clara F. Academy v. Sullivan, supra.* Unquestionably, the purpose of establishing "a school in Omro, or some place in Winnebago county, Wisconsin, for the education of young persons in the domestic and useful arts," was a charitable purpose, within the judicial sense. *Treat's Appeal, supra; McAllister v. McAllister's Heirs, supra; Craig v. Secrist, supra.* Especially is this so, since there is no restriction or limitation as to the class of young persons to be thus educated. In other words, it is to be a public school of the character indicated.

10. The scheme for using such surplus in the establishment of such school is, upon the principles already stated,

sufficiently definite and certain to be carried into execution in the event named, and must therefore be regarded as valid. If such residue should of itself-be insufficient for the purpose of fully establishing such school, and such school can be established by the use of such residue and other funds contributed from other sources, under the charge and management of a proper corporation organized for the purpose, then we see no valid reason why such residue may not be so used in the establishment of such school. Of course, if such residue should, in the opinion of the executors, be insufficient of itself to establish such school, and sufficient funds from other sources are not secured, then such surplus would go to the persons entitled under the statutes.

11. Except the specific devises and bequests given to the wife, the will treats the entire estate as personal property. With such exceptions, and a note from *M. D. Morris*, each of the several gifts are to be paid in money. The direction to so pay in money gave to the executors, by necessary implication, the authority to convert all real estate not so specifically devised into money. *Dodge v. Williams,* 46 Wis. 70; *Scott v. West, supra; Going v. Emery,* 16 Pick. 107; *S. C.* 26 Am. Dec. 645. Such real estate, therefore, must be treated the same as though it were personal property, on the doctrine of equitable conversion. *Ibid.; In re Gunn,* L. R. 9 Prob. Div. 242; *Baker v. Copenbarger,* 15 Ill. 103; *S. C.* 58 Am. Dec. 600; *Dodge v. Williams, supra.*

12. Manifestly, it is the duty of the executors to administer the estate according to the provisions of the will, notwithstanding the duties thus imposed include such as are usually performed by trustees. *Scott v. West,* 63 Wis. 555. The amount of their bonds can be regulated by the trial court. Whether, in case of the death of one or more of the executors, the survivors or survivor could execute the provisions of the will, is left open for determination in case the question should arise.

The costs and disbursements of all parties in this court and the circuit court are payable out of the estate. The county court will make such allowance to the respective parties out of the estate for counsel fees (including the service of *E. R. Hicks*) as, in the exercise of a sound discretion, may be just. Their services have furnished substantial aid in reaching, as we trust, correct conclusions upon the several and intricate questions involved.

*By the Court.*— The judgment of the circuit court is affirmed on the appeal of *Hiram W. Morris* and *M. D. Morris*, and reversed on the appeal of *Louisa M. Webster* and others, and the cause is remanded for further proceedings according to law.